855 F.2d 101
 22 Soc.Sec.Rep.Ser. 673, Unempl.Ins.Rep. CCH 14121A
John R. WALLACE
v.
Otis R. BOWEN, Secretary of Health and Human Services.
Appeal of John R. WALLACE, Appellant.
 No. 87-3840.
 United States Court of Appeals,
Third Circuit.
 Argued June 3, 1988.
Decided Aug. 18, 1988.
 
 John W. McTiernan, Timothy Conboy (argued), Caroselli, Spagnolli and Beachler, Pittsburgh, Pa., for appellant.
 J. Alan Johnson, U.S. Atty., Amy Reynolds Hay, Asst. U.S. Atty., Pittsburgh, Pa., Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Supervisory Asst. Regional Counsel, Lawrence J. Harder (argued), Asst. Regional Counsel, Dept. of Health and Human Services, Office of General Council, Region III, Philadelphia, Pa., for appellee.
 Before SEITZ, SLOVITER and HUTCHINSON, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 
 1
 The Secretary of the Department of Health and Human Services (HHS), after a hearing before an administrative law judge (ALJ) and review by the Appeals Council, found appellant John R. Wallace not disabled and therefore not entitled to social security disability insurance benefits or to supplemental security income benefits under 42 U.S.C. Secs. 423, 1382, 1382c(a)(3)(A) (1982 & Supp. III 1985). Wallace sought review before the district court, which upheld the Secretary's decision and granted his motion for summary judgment.
 
 
 2
 Wallace appeals on two grounds. First, he argues that the ALJ's reliance upon medical expert reports obtained after the hearing without an opportunity for cross-examination by Wallace denied him both his statutory right to have a decision on his claim based on "evidence adduced at the hearing," 42 U.S.C. Sec. 405(b)(1) (Supp. III 1985), and his due process rights under the Constitution. Second, he maintains that the ALJ's decision is not supported by substantial evidence.
 
 
 3
 Because we agree with Wallace that the ALJ's reliance upon post-hearing reports in the circumstances of this case denied him his statutory right to a decision based on "evidence adduced at a hearing," we will not consider Wallace's contention that the Secretary's decision is not supported by substantial evidence.
 
 II.
 
 4
 In February 1985, Wallace, while working as a steelworker, suffered a heart attack. One month later he suffered a stroke which may have caused a loss of vision in the right eye, eventually diagnosed as "homonymous hemianopsia" (defective vision in the right half of the visual field) with additional complications of "ring scotoma" (a circular area of decreased vision) and possible retinitis pigmentosa (a progressive disease affecting the retina). Later that year, Wallace underwent an operation to transfer a vein to improve blood flow in his leg.
 
 
 5
 In May 1985, Wallace applied for disability insurance benefits and supplemental security income on the ground of his heart condition and visual impairments. After his claims were denied, Wallace was granted a hearing before an administrative law judge pursuant to 42 U.S.C. Sec. 405(b)(1). At that hearing, Wallace testified and introduced reports from his examining physicians detailing his cardiological and visual impairments. Following the hearing, Wallace submitted three additional physician's reports, including one from Dr. A. Barnett who concluded that the combination of Wallace's several eye diseases caused an impairment equal to that in the Listing of Impairments for homonymous hemianopsia.[1]
 
 
 6
 Also after the hearing, the ALJ sent Wallace's medical records to two "consultative physicians," Dr. Oberhoff, a Board-certified opthamologist, and Dr. Shugoll, a Board-certified cardiologist, who were both under contract with the HHS to render their medical opinions when requested. Dr. Oberhoff was asked whether Wallace's "visual difficulties" met or equaled one of the Listings for visual impairments contained in 20 C.F.R. pt. 404, subpt. P, App. 1, Secs. 2.03-.05. Dr. Shugoll was asked whether Wallace's "cardiovascular disease" met or equaled the Listing for "[h]ypertensive vascular disease" in section 4.03 of the Listings. Id. Sec. 4.03. Each physician concluded that the claimant's impairments did not meet the relevant listing.
 
 
 7
 The ALJ then sent copies of the reports from the consultative physicians together with what appears to be a standardized form letter to Wallace's counsel, advising him that these reports had been received and notifying him of the following procedures relating to the new evidence:
 
 
 8
 If you wish to submit (1) written comments concerning the evidence received, (2) a brief or written statement as to the facts and law in the case, or (3) additional evidence not previously supplied, I will carefully consider the material. Please send it to me at the above address within 10 days from the date of this letter, or inform me within that time when it may be expected.
 
 
 9
 If I have not heard from you within the 10 day period, I will assume you have no comments or statement to make and that you have no further evidence to submit. The case will still receive the same careful consideration. A decision will be issued based on the additional evidence and other evidence of record.
 
 
 10
 App. at 221.
 
 
 11
 Wallace's counsel objected to the inclusion of the reports into the record on several grounds, including that use of reports obtained "after the hearing" without "the opportunity to confront these physicians and challenge their conclusions" raised a due process question. App. at 222. Wallace's counsel subsequently sent to the ALJ one additional medical report from Dr. K. Barron, who had examined Wallace, along with a letter to the ALJ "renew[ing]" Wallace's objections to the use of the post-hearing reports from the consultative physicians. App. at 224.
 
 
 12
 The ALJ then rendered his decision, finding Wallace not disabled under the terms of the Social Security Act. In reaching this conclusion, the ALJ first found that "claimant's impairments do not meet or equal the criteria of any ... Listing." In so finding the ALJ relied, in the ALJ's own words, "in particular [on] the medical advisor's [consultative physician's] observations." App. at 21.
 
 
 13
 Although the ALJ did find that Wallace's impairments precluded him from returning to his former work as a steelworker, he found that Wallace was able to perform "sedentary work activity," and was not therefore disabled. In reaching that determination, the ALJ assigned "greater weight" to the opinion of Dr. Oberhoff, the consultative physician, than to the opinion of Dr. Barron, who had submitted a report on behalf of Wallace. App. at 21.
 
 
 14
 The Appeals Council denied Wallace's request for review of the ALJ's determination, specifically concluding that the use of the consultative physician reports obtained post-hearing did not constitute a violation of due process. Two grounds were cited for that conclusion: that Wallace's counsel was given an opportunity to "comment" on the post-hearing reports, and, additionally, that these reports were "only one factor used by the Administrative Law Judge in his evaluation." App. at 4-5. The district court affirmed, rejecting Wallace's contention that the procedure used violated due process and the statute.[2] We have plenary review over the district court's conclusion that Wallace's rights were not violated by the procedure utilized on his claim.
 
 III.
 A.
 
 15
 Wallace's argument begins with the Social Security Act's provision for a hearing and for a determination based on evidence adduced at the hearing. Section 205(b) of the Act provides in relevant part:
 
 
 16
 Upon request by any such individual [who receives an unfavorable determination of his claim] ... [the Secretary] shall give such applicant ... reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision.
 
 
 17
 42 U.S.C. Sec. 405(b)(1) (emphasis added).
 
 
 18
 In support of his argument that this statutory entitlement vests the claimant with the rights of procedural due process commonly associated with requirements of notice and an opportunity to be heard, including cross-examination, Wallace points to decisions of other courts of appeals that have held that reliance on post-hearing physicians' reports was improper. See Lonzollo v. Weinberger, 534 F.2d 712 (7th Cir.1976) (claimant's right under 42 U.S.C. Sec. 405(b) to decision based on evidence adduced at hearing was not satisfied where Appeals Council partially based its decision on post-hearing evidence, notwithstanding claimant's opportunity to submit additional evidence or written comments); Gullo v. Califano, 609 F.2d 649, 950 (2d Cir.1979) (per curiam) (ALJ's "substantial reliance" on post-hearing report without giving claimant an opportunity for cross-examination or rebuttal denied her due process); Townley v. Heckler, 748 F.2d 109, 114 (2d Cir.1984) (same); see also Allison v. Heckler, 711 F.2d 145, 147 (10th Cir.1983) (ALJ's use of post-hearing report both violated claimant's due process rights and exceeded Secretary's statutory authority under section 405(b)(1)); Cowart v. Schweiker, 662 F.2d 731 (11th Cir.1981) (citing with approval both Gullo and Lonzollo ); cf. Dorman v. Harris, 633 F.2d 1035, 1039 (2d Cir.1980) (where additional evidence in overpayment proceeding became available after the hearing, ALJ should have reopened the hearing).
 
 
 19
 The Secretary argues that cases such as Lonzollo, Townley, and Gullo are distinguishable on their facts from the present case on the ground that in some of these cases the claimant was not even shown the post-hearing report. This factual distinction is not, in fact, present in Lonzollo and was, at any rate, not crucial to the decisions in any of these cases. The Secretary also argues that in Lonzollo the plaintiff was unrepresented. However, if the statute fairly read requires that a "hearing" encompass the right of cross-examination, that right would inure to represented as well as unrepresented claimants.
 
 
 20
 Finally, the Secretary argues that the reading given by the Townley and Lonzollo courts to section 405(b) is "overly narrow." This was the position taken in Lawson v. Secretary of HHS, 688 F.2d 436, 440 (6th Cir.1982), the only case cited by the Secretary that supports his view that reliance on post-hearing reports by the Appeals Council is not violative of the statute. In Lawson, the court reasoned that the regulation permitting the Appeals Council to obtain evidence only where " 'the rights of the claimant will not be adversely affected' protects the claimant's right to be heard, for it means that in a case in which the ability to cross-examine witnesses or present additional live testimony may be of value to the claimant, the Appeals Council must remand the case to the ALJ for the gathering of additional evidence." Id. at 440 (quoting 20 C.F.R. Sec. 410.664(b) (1987)). Lawson does not provide the Secretary with strong support because the court declined to consider the constitutional adequacy of the procedures on the ground that Lawson waived his due process objections by failing to comment on the post-hearing evidence or presenting additional evidence. See 688 F.2d at 440.
 
 
 21
 This court has not yet taken a position on whether the ALJ or the Appeals Council may rely on post-hearing evidence. We note that the Social Security Act does not define the "hearing" at which the evidence "adduced at the hearing" must be based. At oral argument, the Secretary argued that "hearing" in this context should be construed as "at the hearing level." None of the other cases refer to this interpretation, and thus it is not clear to us whether this interpretation was proffered and rejected in these cases.
 
 
 22
 The Secretary argues that this interpretation is supported by regulations providing that "[t]he decision [of the ALJ] must be based on evidence offered at the hearing or otherwise included in the record." 20 C.F.R. Secs. 404.953(a), 416.1453(a) (emphasis added). He supports the regulations not only under his broad authority to promulgate regulations "to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder," 42 U.S.C. Sec. 405(a), but also on the ground that the same statutory provision that requires that a decision be based on evidence adduced at the hearing also authorizes the Secretary to conduct investigations and receive evidence.[3]
 
 
 23
 Assuming, without deciding, that the statute and the regulations relied on by the Secretary permit the introduction of post-hearing evidence, which, as the Secretary notes, is frequently proffered by the claimant in support of his or her claim, we believe it is unmistakable under the statute that the Secretary may not rely on post-hearing reports without giving the claimant an opportunity to cross-examine the authors of such reports.[4]
 
 
 24
 In Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), the Supreme Court, in considering the hearing and review procedures under the Social Security Act, "accept[ed] the proposition[ ] ... that procedural due process is applicable to the adjudicative administrative proceeding involving 'the differing rules of fair play, which through the years, have become associated with differing types of proceedings.' " [citation omitted]. The Court equated the Social Security Act procedures with those of the Administrative Procedure Act, which expressly entitle a party, inter alia, "to conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. Sec. 556(d) (1982), quoted in Richardson, 402 U.S. at 409, 91 S.Ct. at 1431.
 
 
 25
 Although the Court held that examining physician reports adverse to the claimant could be used as "substantial evidence" even though the reports were hearsay and the physicians were not present at the hearing, the Court carefully qualified its holding by approving such admission "when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician." 402 U.S. at 402, 91 S.Ct. at 1428. Later in the opinion the Court again stressed that the procedure's integrity and fundamental fairness were satisfied by the admission of consultants' reports "subject as they are to being material and to the use of the subpoena and consequent cross-examination." Id. at 410, 91 S.Ct. at 1431. We construe Richardson as holding that an opportunity for cross-examination is an element of fundamental fairness of the hearing to which a claimant is entitled under section 205(b) of the Social Security Act, 42 U.S.C. Sec. 405(b).
 
 
 26
 The Secretary argues that it is sufficient under the statute to give a claimant an opportunity to comment on and present additional evidence in response to post-hearing reports. He maintains that cross-examination is not necessary in cases such as this where a medical opinion is obtained post-hearing, in that the issue is "wholly medical" and can be "addressed with great probity by a physician who has reviewed the medical record." Appellee's Brief at 10. In the Secretary's view, the opportunity to provide written comment is an adequate substitute for cross-examination since "the only real possible objection" is that it is not supported by the medical record, an objection which can be equally well made by written comment. Id. at 11.
 
 
 27
 We disagree with the Secretary's evaluation of the utility of cross-examination in such a situation. Effective cross-examination could reveal what evidence the physician considered or failed to consider in formulating his or her conclusions, how firmly the physician holds to those conclusions, and whether there are any qualifications to the physician's conclusions. See, e.g., Pidgeon v. Health and Human Services, 493 F.Supp. 1088, 1089 (E.D.Mich.1980) ("Cross examination of the doctor to establish the psychiatric philosophy that formed the basis of his professional opinion could affect the weight given to [claimant's] testimony, especially where, as here, there exists evidence of record to support the plaintiff's contentions.").
 
 
 28
 We thus agree with those courts that have rejected the Secretary's position that the opportunity to comment on post-hearing reports adequately protects a claimant's rights. See Lonzollo, 534 F.2d at 714-15; cf. Townley, 748 F.2d at 114 (opportunity to submit objections and additions to interrogatories posed to vocational expert did not satisfy claimant's due process right to cross-examine the expert); Tripodi v. Heckler, 100 F.R.D. 736, 739 (E.D.N.Y.1984) (awarding claimant attorney's fees because ALJ's reliance on post-hearing report without providing claimant opportunity for cross-examination violated statute, regulations, and due process).
 
 
 29
 Nor can we accept the district court's reasoning that a claimant's right to cross-examine a physician who has issued a post-hearing report arises only if that physician has actually examined the claimant. Indeed, the need for cross-examination may be heightened when the physician's opinion is based on second-hand readings of other physician's medical reports.
 
 
 30
 We thus hold that when an administrative law judge chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports, and must reopen the hearing for that purpose if requested. The necessary consequence of our opinion requires modification of the form letter to give notice that the claimant has a right to a supplementary hearing at which the claimant may cross-examine the authors of any post-hearing reports submitted by the Secretary.
 
 B.
 
 31
 Finally, the Secretary maintains that even if Wallace was entitled to an opportunity to cross-examine the consultative physicians, he waived that opportunity by not requesting that the ALJ subpoena the two physicians for cross-examination. In the Secretary's view, the opportunity for subpoena and cross-examination is "clearly" provided under 20 C.F.R. Sec. 404.950(d)(2), which provides: "Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge ... at least 5 days before the hearing date."
 
 
 32
 We reject the Secretary's position for several reasons. We do not read this regulation as "clearly" providing the right to subpoena a witness after the hearing has been completed; the regulation plainly requires that application for a subpoena be sent to the ALJ "5 days before the hearing date." Id. (emphasis added). Because this regulation confers no rights on a claimant after the hearing date, Wallace could not have waived his opportunity to cross-examine the physicians based on this regulation. This is therefore unlike the situation in Richardson where the Court held that the claimant had waived cross-examination because he "did not take advantage of the opportunity afforded him" under the regulation that entitled a claimant to subpoena reporting physicians prior to a hearing. 402 U.S. at 404, 91 S.Ct. at 1429.
 
 
 33
 It is also significant that the notice of claimant's rights that was sent to Wallace by the HHS at the time these post-hearing reports were brought to his attention listed only three options Wallace might pursue in response to these new reports: submit written comments; submit a brief or other written statement; or submit additional evidence. App. at 221. Having failed to advise the claimant that there was also a right to subpoena the authors of these reports at another hearing, the Secretary cannot reasonably argue now that Wallace waived that right by not doing so.
 
 
 34
 The Secretary admits that it might be unfair to find a waiver if Wallace were unrepresented, but argues that we should find a waiver here because Wallace was represented by counsel who failed to request a subpoena. No waiver can be effective if counsel is not given reasonable notice. Waiver of the right to subpoena and cross-examine witnesses concerning post-hearing evidence must be "clearly expressed or strongly implied from the circumstances." Lonzollo, 534 F.2d at 714. In light of the lack of any provision in the regulations for a subpoena under these circumstances and the failure to notify Wallace's counsel that there was an option to subpoena the consultative witnesses, counsel did not receive the type of reasonable notice that could serve as the predicate for a waiver.
 
 
 35
 Moreover, Wallace's counsel, rather than remaining silent as to the procedure used, made his objections to the use of the post-hearing reports clear to the ALJ: "I have not had the opportunity to confront these physicians and challenge their conclusions." App. at 222. This conduct is to be contrasted with that in Hudson v. Heckler, 755 F.2d 781, 784 (11th Cir.1985) (per curiam), where the claimant's representative never made any objection to the use of the post-hearing reports. Under the circumstances before us, we hold there was no waiver by Wallace or his attorney of the right to cross-examination.
 
 IV.
 
 36
 In this case, the consultative physician reports were substantially relied on by the ALJ both in his determination that Wallace's impairments, particularly his visual impairments, did not meet or equal the Listings and for his determination that Wallace was not so impaired that he could not do sedentary work. Although one of Wallace's examining physicians, Dr. Barnett, had found Wallace's visual impairments to equal the Listing in section 2.05, the ALJ stated that he relied "in particular" upon the report of Dr. Oberhoff, the consultative physician, to find that this impairment did not meet the Listing. App. at 21. Similarly, Dr. Oberhoff's report was given "greater weight" than that of an examining physician in determining Wallace's capacity to do sedentary work. Id. Under these circumstances, we conclude the reliance upon evidence adduced outside of a hearing without the opportunity for cross-examination could have affected the ultimate result.
 
 
 37
 We will therefore vacate the judgment of the district court and remand with directions for it to remand the case to the Secretary who should afford Wallace, at a minimum, the right to cross-examine the physicians.
 
 
 
 [1]
 The Listing of Impairments is set out in 20 C.F.R. pt. 404, subpt. P, App. 1 (1987), and describes for each "body system" the degree of impairment that is per se disabling. When a disability claimant's impairment is found to meet or equal a listing, he or she is entitled, without more, to benefits. See id. at Sec. 404.1520(d)
 
 
 [2]
 The district court also found that the Secretary's determination adverse to Wallace was supported by substantial evidence
 
 
 [3]
 The provision reads:
 The Secretary is further authorized, on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of this subchapter. In the course of any hearing, investigation, or other proceeding, he may administer oaths and affirmations, examine witnesses, and receive evidence.
 42 U.S.C. Sec. 405(b)(1).
 
 
 [4]
 We note with some concern that the Secretary's form notice to Wallace did not even give notice that Wallace had the opportunity to request a supplementary hearing on the post-hearing additional evidence as well as the right to subpoena witnesses, notwithstanding the Secretary's own regulation on "Opportunity to review and comment on evidence obtained or developed by us after the hearing," which provides, inter alia, "If you believe that it is necessary to have further opportunity for a hearing with respect to the additional evidence, a supplementary hearing may be scheduled at your request." 20 C.F.R. Sec. 404.916(f) (1987)