**Duane E. COFFIN, Appellant,**

v.

**Louis W. SULLIVAN,\* Secretary of Health and Human Services, Appellee.**

**No. 89–1100.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1989.

Decided Feb. 9, 1990.

---

\* Louis W. Sullivan, M.D., succeeded Otis R. Bowen, M.D., as Secretary of Health and Human

Services in March 1989. Pursuant to Fed.R. App.P. 43(c)(1), he is substituted as appellee.

H. Edwin Detlie, Ottumwa, Iowa, for appellant.

Richard L. Richards, Des Moines, Iowa, for appellee.

Before FAGG and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

BEAM, Circuit Judge.

Duane E. Coffin appealed to the United States District Court for the Southern District of Iowa because an Administrative Law Judge (ALJ) denied Coffin's claims for Social Security Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433 (1982 & Supp. V 1987), and Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–1383c (1982 & Supp. V 1987). On December 12, 1988, the district

court [1] filed a Judicial Review Decision pursuant to 42 U.S.C. § 405(g) (1982), and entered judgment in favor of the Secretary of Health and Human Services and against Coffin. We affirm.

## I. BACKGROUND

Coffin was born on September 12, 1932, and worked from October of 1966 to November of 1982 as a semi-skilled machine operator and a wire cutter. Coffin was laid off in June of 1982, and drew unemployment compensation benefits at that time. Coffin was called back to his job one month later, but he was terminated in November of 1982 because of numerous absences. Coffin alleges that on December 21, 1984, he became "disabled" because of mental problems and difficulty with his arms, legs, and back. His conditions have been diagnosed as schizoaffective [2] disorder, severe degenerative osteoarthritis [3] of the neck with moderately severe radicular [4] symptoms of the left arm and hand, chronic lumbosacral [5] strain, recurrent carpal tunnel syndrome, [6] and intrinsic asthma.

In January of 1980, Coffin was hospitalized for one week at the Mental Health Institute in Mount Pleasant, Iowa, at which time he was diagnosed as having a manic-depressive illness in the early stages. Coffin's family doctor is Donal D. Hill, D.O., of Fairfield, Iowa. Dr. Hill treated Coffin primarily for asthma-related problems that Coffin suffered from during his lifetime. In June of 1983 Coffin visited with a Vocational Rehabilitation counselor and applied for services. Jack W. Brindley, M.D., examined Coffin and reported that Coffin could do any work that did not require

lifting more than fifty pounds, or constant stooping or bending. Todd T. Langager, M.D., examined Coffin for breathing problems in July of 1983 and reported that Coffin would be restricted only in very physically demanding jobs.

Coffin was readmitted to the Mental Health Institute in Mount Pleasant, Iowa, in January of 1985. He was discharged with a diagnosis of a manic disorder in remission. Due to complaints of numbness in his hands, Coffin was referred to the University of Iowa Hospitals and Clinics. In May of 1985 Coffin underwent bilateral carpal tunnel release, and six weeks later was allowed to return to unrestricted activities.

Coffin applied for disability insurance benefits and SSI on March 15, 1985, and the Social Security Administration requested that Coffin be examined by W.C. Baumann, M.D. After examining Coffin in June of 1985, Dr. Baumann reported that Coffin's asthma would not interfere with reasonable factory work and that Coffin's manic-depressive state was in remission. Dr. Baumann also found that Coffin had no significant low back disorder and that the carpal tunnel syndrome was slowly resolving.

Richard E. Phelps, Ph.D., conducted a psychological evaluation of Coffin in June of 1985 and concluded that Coffin could perform simple, repetitive tasks. Also, Coffin could work if his job involved only minimal levels of stress and pressure. One month later, Coffin experienced pain and numbness in his left shoulder and fingers

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

2. "Schizoaffective" is defined as "pertaining to or exhibiting features of both schizophrenic and mood disorders (mania and depression)." Dorland's Illustrated Medical Dictionary 1491 (27th ed. 1988).

3. "Osteoarthritis" is defined as "noninflammatory degenerative joint disease occurring chiefly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain and stiff-

ness, particularly after prolonged activity." Id. at 1197.

4. "Radicular" is defined as "of or pertaining to a radical or root." Id. at 1405.

5. "Lumbosacral" is defined as "pertaining to the loins and sacrum." Id. at 956.

6. "Carpal tunnel syndrome" is defined as "a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." Id. at 1632.

of his left hand. Coffin responded fairly well to treatment, but Dr. Hill reported that Coffin would have difficulty with manual work and prolonged sitting. Dr. Hill did not find Coffin 100 percent disabled, although he did believe Coffin would have problems with stressful jobs. Dr. Hill saw Coffin in March of 1986, and stated that the pain and numbness in Coffin's left hand was probably due to moderate median nerve damage from prolonged compression involving the past carpal tunnel syndrome. Dr. Hill said that the big question was who would hire Coffin with his educational background, psychological history, and physical limitations.

Eliza L. Pineda, M.D., submitted a report on Coffin's condition in October of 1985. Dr. Pineda had first examined Coffin in April of 1985 and she indicated that Coffin was in remission because she had not observed any overt or blatant affective or psychotic symptoms since that time. Dr. Pineda opined that Coffin could not handle a full-time job, but that a part-time, non-intellectual job would be within his capacity.

Pursuant to a subsequent report issued by Dr. Pineda, in August of 1986 an Iowa District Court ordered Coffin to continue outpatient treatment at the Community Health Center of Henry, Louisa, and Jefferson Counties in Iowa. Sharon Moore, a mental health advocate, issued a report dated October 1, 1986, which concluded that Coffin was walking a thin line and that the extra pressure of a job could cause Coffin to relapse into his previous mental condition.

Because Coffin's applications for disability insurance benefits and SSI were denied through the reconsideration level, Coffin filed a request for a hearing before an ALJ on June 13, 1986. On August 20, 1986, the ALJ held a hearing in Oskaloosa, Iowa. Coffin appeared with his attorney, his wife, and his mother-in-law. After the hearing, the ALJ sent written interrogatories to Marion S. Jacobs, a vocational expert, who was not present at the hearing. In the interrogatories, the ALJ described a hypothetical claimant with characteristics such as "the inability to concentrate at a level of greater than 5 on a scale of 1 to 10 (with work at a level of 10 involving the greatest amount of concentration)," and asked Jacobs what type of jobs this claimant could perform. Jacobs responded that the hypothetical person could work as a home telephone solicitor or a hotel night clerk, and that there were numerous Iowa and national positions available in these fields.

The ALJ sent copies of the proposed interrogatories to Coffin's attorney and informed the attorney that Coffin had the right to object to these interrogatories or propose his own questions. The ALJ also sent copies of Jacob's answers to Coffin's attorney and gave Coffin the opportunity to offer comments or submit additional evidence. Coffin's attorney did not respond to either of these proposals.

On February 3, 1987, the ALJ made the following relevant findings:

3. The medical evidence establishes that the claimant has a schizoaffective disorder in remission, intrinsic asthma, and is status post bilateral carpal tunnel release, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The allegations of the claimant cannot be considered credible when evaluated together with the reports from the treating and consulting physicians, the types and dosages of medication, the reason for which the claimant terminated work activities, and the reports from his physical therapists.

5. The claimant has the residual functional capacity to perform the requirements of work except that which involves lifting more than 20 pounds on occasion or ten pounds routinely, engaging in repetitive hand operations or fine manipulation, work which does not allow him to alternate positions at will, stooping or bending more than occasionally, or concentrating at a level of greater than 5 (on a scale of 1 to 10, with 10 representing the greatest concentration) (20 CFR 404.1545 and 416.-945).

. . . .

11. Although the claimant's limitations do not allow him to perform the full range of work at any level of endeavor, considering his age, education, past work experience, and residual functional capacity, the vocational expert identified unskilled jobs which exist "in significant numbers" in the national economy that he could perform. Examples of such jobs are: an at-home telephone solicitor or a night clerk at a motel/hotel. The vocational expert cited the indicence [sic] of these jobs, each of which exists in significant numbers in the national economy.

13. [sic] The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.-1520(f) and 416.920(f)).

App. at 31-32.

On May 17, 1987, the Appeals Council of the Social Security Administration denied Coffin's request for review. Thus, the ALJ's decision was the final order of the Secretary. Pursuant to 42 U.S.C. § 405(g), Coffin sought judicial review of the Secretary's decision in the United States District Court for the Southern District of Iowa. On December 12, 1988, the district court entered judgment in favor of the Secretary.

On appeal, Coffin argues that: (1) the district court erred in applying a scope of review which was too narrow; (2) giving Coffin the opportunity to rebut the post-hearing reports did not fulfill Coffin's right to a decision based on evidence adduced at the hearing; (3) the district court erred in concluding that Coffin waived his right to challenge the interrogatories; (4) the district court erred in finding that the Eighth Circuit approved the use of post-hearing interrogatories; (5) the ALJ ignored the opinions of Coffin's treating physicians; (6) the ALJ's hypothetical question posed to the vocational expert was not based on substantial evidence in the record; and (7) the decision of the Secretary should be reversed rather than remanded.

## II. DISCUSSION

### A. Standard of Review

■ Coffin argues that the district court did not make a searching inquiry into the record, and thus, failed to apply the law and the proper scope of review as set forth by the Eighth Circuit. "[T]he district court's review should be based on whether substantial evidence on the record as a whole supports the Secretary's decision," and "[a] notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole.'" *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989) (quoting *Jackson v. Bowen*, 873 F.2d 1111, 1113 (8th Cir.1989)). In this case, the district court found that "the ALJ explicitly explained his conclusion in the body of his opinion. Substantial evidence in the record supports the ALJ's conclusion." *Coffin v. Bowen*, No. 87-349-A, slip op. at 3 (S.D. Iowa Dec. 12, 1988). Accordingly, we find that the district court applied the proper standard of review.

### B. Post-hearing Vocational Expert Interrogatories

■■ On September 30, 1986, the ALJ sent Coffin's attorney a letter that stated in relevant part:

In the course of examining this case, I have determined it is necessary to obtain evidence from a vocational expert. I propose to do that by submitting written interrogatories or questions to a vocational expert to be answered after reviewing the file.

A copy of the proposed interrogatories is included for your examination. You should be aware that you have the right to object to any of the interrogatories and the right to propose your own interrogatories. If I have no response from you within ten (10) days of the date of this letter, I will assume that you have no objection and that you have no other interrogatories to propose. At that time, I will proceed with the interrogatories as enclosed.

App. at 36.

On November 6, 1986, the ALJ sent Coffin's attorney the following letter and form:

Answers to Interrogatories

Please examine this evidence, complete the form below, and return it to this office within ten (10) days of the date of this letter.

. . . . .

## EXAMINATION OF EVIDENCE

Claimant or representative to check appropriate statements:

_____ I have examined the above evidence and have no comments to make.

_____ I have examined the above evidence and my comments are as follows: (Use reverse side, if necessary.)

_____ I have no further evidence to submit.

_____ I am submitting the following evidence: (Use reverse side, if necessary.)

App. at 357.

Coffin's attorney did not respond to either of these letters. Rather, the attorney argued on appeal to this court that he knew that the ALJ had in the past reproached him and others for objecting to the interrogatories or for submitting their own interrogatories. The district court found that the ALJ's submission of written interrogatories did not violate Coffin's right of due process. Further, because the ALJ requested input and Coffin chose not to respond, Coffin waived his right to challenge the written interrogatories. *See Coffin*, No. 87–349–A, at 3–4.

Coffin argues that the ALJ is not allowed to consider any evidence obtained after the hearing is concluded, unless the parties agree to its use. Coffin also asserts that his attorney did not waive his right to challenge the interrogatories by not responding when he was given the opportunity. Coffin argues that the decision in *Townley v. Heckler*, 748 F.2d 109 (2d Cir.1984), should apply because *Townley* deals with the same factual language as the case at hand. In *Townley*, the court held that use "of such a post-hearing report violates a claimant's due process rights." *Id.* at 114. Coffin, however, fails to note that in *Townley* the appellant's attorney "was not informed of the need for

expert vocational evidence until after the report was filed with the ALJ. Further, appellant was denied an opportunity to examine that vocational report, and, despite claimant's request, no additional hearing was held." *Id.*

In *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), the Supreme Court addressed the issue of due process requirements in the context of physicians' reports in social security disability claim hearings. The Court approved admission of such reports and stated that they could be used as "substantial evidence" even if the reports were hearsay "when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician." *Id.* at 402, 91 S.Ct. at 1428. In *Richardson*, the reports had been issued before the hearing, and the physicians who prepared the reports had examined the claimant.

In the case before us, the report was issued post-hearing, and the vocational expert who prepared the report did not examine Coffin. The practice of allowing post-hearing reports is not uncommon. The ALJ frequently will not close the record after the hearing either to order a post-hearing examination of the claimant or to allow the claimant to introduce post-hearing evidence in support of his claim. *See Wallace v. Bowen*, 869 F.2d 187, 191–92 (3d Cir.1988); *Hudson v. Heckler*, 755 F.2d 781, 783 (11th Cir.1985), *cert. granted, Bowen v. Hudson*, —— U.S. ——, 109 S.Ct. 527, 102 L.Ed.2d 559 (1988), *aff'd on other grounds, Sullivan v. Hudson*, —— U.S. ——, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Further, this circuit affirmed the decision of an ALJ who created hypothetical claimants, relied on the reports of vocational experts, and submitted post-hearing interrogatories. *See Buckler v. Bowen*, 860 F.2d 308, 310–11 (8th Cir.1988). Thus, we do not find that the factual distinctions of whether the reports were issued before or after the hearing, or whether the claimant was examined by the reporting expert, to be crucial to our decision. Rather, the

proper focus in this case is on the requirements of due process, and whether the post-hearing interrogatories posed to the vocational expert satisfied those requirements.

Due process requires that a claimant be given the opportunity to cross-examine and subpoena the individuals who submit reports. *See Richardson*, 402 U.S. at 402, 91 S.Ct. at 1427; *McClees v. Sullivan*, 879 F.2d 451, 452 (8th Cir.1989). The ALJ, however, is not required to inform the claimant's attorney that the claimant has a right to cross-examine the vocational expert. *See Hudson*, 755 F.2d at 785. The ALJ is required to allow the claimant to cross-examine the witness, but if the claimant's attorney fails to object to the post-hearing reports or remains silent when the opportunity to request cross-examination arises, the right to cross-examination is waived. *See Wallace*, 869 F.2d at 194 (claimant's attorney objected to post-hearing reports and did not waive right to cross-examination, but this conduct must be contrasted with that of an attorney who does not object); *Hudson*, 755 at 784–85 (claimant's legal representative had opportunity to cross-examine doctor but did not respond and, thus, waived right).

As previously indicated, in this case the ALJ sent Coffin's attorney two letters which indicated that Coffin could object to the interrogatories, propose his own interrogatories, comment on the evidence, and submit additional evidence. We hold that these letters satisfied due process requirements. However, our holding is limited to the facts of this case. If Coffin had been unrepresented, he would not have waived his right to cross-examination. If a claimant represents himself, the ALJ has a special responsibility to inform the claimant that he has the right of cross-examination. Coffin, however, was represented by a lawyer, an individual who is presumed to know about the right of cross-examination. The ALJ, therefore, is not required to list and explain every option available to an attorney in order to meet due process requirements. Thus, no due process violation occurred.

## C. Hypothetical Question

 Coffin argues that part of the ALJ's hypothetical question [7] given to the vocational expert was not based on substantial evidence in the record. Coffin contests the description of the hypothetical claimant in the question as having "the inability to concentrate at a level of greater than 5 on a scale of 1 to 10 (with work at a level of 10 involving the greatest amount of concentration)." App. at 353. Coffin argues that because there was no support in the record for this characterization, the hypothetical was invalid.[8]

---

7. The hypothetical question posed was:

Assume for purposes of this question that the claimant is 53 years old, has a high-school education, and that he has a work background as set out in question 9. Assume also that the claimant has the following limitations: the inability to lift more than 20 pounds on occasion or 10 pounds frequently, the inability to engage in repetitive hand operations or fine manipulation, the inability to tolerate work which does not allow him to alternate positions at will, the inability to stoop or bend more than occasionally, and the inability to concentrate at a level of greater than 5 on a scale of 1 to 10 (with work at a level of 10 involving the greatest amount of concentration). Are there unskilled jobs in existence which the claimant can perform? If so, please state a sampling of these jobs and provide their exertional level, and the number and location of their existence. If your answer is "no," please explain.
App. at 353.

8. Judge Heaney, in his dissent, makes an argument not advanced by the appellant. He refers to the diagnosis of Dr. Richard E. Phelps that Coffin was suffering from schizophrenic disorder, in apparently, to the October 1, 1986, report of Sharon Moore, a mental health advocate, and argues that reference to these mental disorders should have been specifically encompassed within the hypothetical question propounded. Dr. Phelps, who administered the MMPI tests and Zung test referred to in the dissent said:

He [Coffin] does seem to have the ability to attend and perform simple repetitive tasks. Under medication, he would be able to withstand the stress and pressures associated with day-to-day work activity, although it is felt that his ability to carry out day-to-day work activity would definitely diminish as stress and pressure of work began to increase beyond minimal levels.

App. at 269. Thus, the schizophrenic disorder, in remission, diagnosed by Dr. Phelps, was, at

At the August 20, 1986 hearing, Coffin testified that "[i]t seems like I can't memorize anything, my memory it don't stay with me as good as it use [sic] to." App. at 81. Coffin also testified that he had problems remembering directions and instructions. *See id.* From this, we find that the ALJ properly incorporated Coffin's testimony into the hypothetical posed to the vocational expert. *See Buckler,* 860 F.2d at 311. Accordingly, the record contains substantial evidence supporting the ALJ's hypothetical question and, thus, the hypothetical was not invalid.

We have reviewed Coffin's other arguments and find that they are without merit.

## III. CONCLUSION

For the reasons set forth above, we find that the district court applied the proper standard of review and that Coffin waived his right to cross-examination of the vocational expert by not responding or objecting to the proposed and answered interrogatories. Thus, no due process violation occurred. Further, there was substantial evidence in the record to support the ALJ's hypothetical question posed to the vocational expert. Accordingly, the decision of the district court is affirmed.

HEANEY, Senior Circuit Judge, concurring in part and dissenting in part.

The majority is correct in holding that the ALJ satisfied due process requirements by giving Coffin's attorney two opportunities to object to or comment on the post-hearing interrogatories and the vocational expert's responses thereto. Similarly, the attorney's failure to respond to the ALJ's letters constituted a waiver of Coffin's right to cross-examine the vocational expert. My disagreement lies with the major-

ity's finding that the hypothetical question posed to the vocational expert was based on substantial evidence in the record.

Every mental health professional who examined Coffin expressed doubt that Coffin could function effectively in day-to-day work activity if he were subjected to anything more than minimal levels of stress. Moreover, personnel from the mental health center where Coffin was treated believed that the pressure of a job might cause his mental state to deteriorate to the level at which he previously had been hospitalized.[1]

Dr. Richard E. Phelps, a clinical psychologist who examined Coffin at the request of the Social Security Administration, diagnosed him as suffering from a schizophrenic disorder, paranoid type, in remission.[2] Phelps noted that Coffin appeared in control of his thoughts and emotions, but theorized that this control was due to Coffin's medication. Coffin's Minnesota Multiphasic Personality Inventory (MMPI) profile was extremely elevated. Such a profile usually reflects a marked psychological disturbance with symptoms including an agitated depression with possible thought and perceptual disorders. Coffin's results on the Zung Self-Administered Depression Scale were consistent with those of the MMPI. Coffin was on medication to control his mental disorder at the time he took both psychological tests. Despite Phelps' report and other evidence in the record, the ALJ's hypothetical failed to include any mention of Coffin's mental disorder other than "the inability to concentrate at a level of greater than 5 on a scale of 1 to 10."

Questions posed to a vocational expert should "precisely set out the claimant's particular physical and mental impairments." *Ledoux v. Schweiker,* 732 F.2d

least indirectly, incorporated within the hypothetical question by way of the reference to acceptable levels of concentration.

1. The letter detailing the opinions of mental health personnel and social workers who had dealt with Coffin was not included in the administrative record until after the hearing and was not read by the vocational expert before she responded to the ALJ's interrogatories.

2. The Mental Health Institute of Mount Pleasant, Iowa, diagnosed Coffin as suffering from a schizoaffective disorder. Other medical evidence in the record describes Coffin as manic depressive, manic type, in remission, and as suffering from a bipolar disorder, manic, in remission.

1385, 1388 (8th Cir.1984) (quoting *Tennant v. Schweiker,* 682 F.2d 707, 711 (8th Cir. 1982)). The ALJ's omission of Coffin's mental disorder from the hypothetical interrogatory sent to the vocational expert rendered that question defective. This Court often has held that testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision. *See, e.g., Douglas v. Bowen,* 836 F.2d 392, 396 (8th Cir.1987); *Bradley v. Bowen,* 800 F.2d 760, 763 n. 2 (8th Cir.1986). The validity of the vocational expert's conclusion that Coffin can work as a telephone solicitor or a hotel night clerk is questionable because it was based on an improper hypothetical.[3] The resulting conclusion that Coffin is not disabled is similarly flawed.

The truly unfortunate aspect of the majority's decision is that it appears from the record that Coffin no longer meets the insured status requirement for disability benefits. Thus, in the unlikely event that Coffin does secure other employment, but is unable to withstand the stress of a full-time job as the doctors have predicted, Coffin's eligibility for disability benefits will have lapsed. Coffin will be relegated to applying for Supplemental Security Income benefits, which will give him substantially less money than would disability benefits.

It is regrettable that a claimant may be denied benefits because of his attorney's

inadvertence. I concur in the majority's holding that the ALJ afforded Coffin due process in this case and that Coffin waived his right to cross-examine the vocational expert. Because I believe that the ALJ's hypothetical to the vocational expert was not supported by substantial evidence, however, I dissent from the majority's finding that the question was valid. Accordingly, we should reverse and remand with instructions that Coffin be awarded benefits as of December 21, 1984.

---

3. The *Dictionary of Occupational Titles* describes the duties of a telephone solicitor as follows:

> Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered. Quotes prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling.

U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* 221 (4th ed. 1977).

The same source describes a hotel clerk's tasks as follows:

> Performs any combination of following duties for guests of hotel, motel, motor lodge, or condominium-hotel: Registers and assigns rooms to guests. Issues room key and escort instructions to bellhop * * *. Date-stamps, sorts, and racks incoming mail and messages.

Transmits and receives messages, using equipment, such as telegraph, telephone, Teletype, and switchboard. Answers inquiries pertaining to hotel services; registration of guests; and shopping, dining, entertainment, and travel directions. Keeps records of room availability and guests' accounts. Computes bill, collects payment, and makes change for guests * * *. Makes and confirms reservations.

*Id.* at 193.

Coffin's treating and consulting psychologists predicted that Coffin would manifest significant interpersonal difficulties and suspicion and distrust of others. They also estimated his capabilities as being limited to the performance of simple, repetitive tasks. Had the ALJ's interrogatories related this information, the vocational expert might not have concluded that Coffin could perform jobs requiring so much interaction with others or such a variety of duties.