Lavinia **FELICIANO,** Plaintiff,

v.

Shirley S. **CHATER,** Commissioner of Social Security, Defendant.

Civ. No. 94–1028(PG).

United States District Court, D. Puerto Rico.

Sept. 28, 1995.

Salvador Medina De La Cruz, Río Piedras, PR, for Plaintiff.

María Hortensia Ríos, Asst. U.S. Attorney, Hato Rey, PR, for Defendant.

### *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

Plaintiff is before the court pursuant to section 205(g) of the Social Security Act (the Act), for review of the decision of the Social Security Administration (SSA) denying her claim for disability benefits. Plaintiff contends the following: first, that the Administrative Law Judge (ALJ) submitted a hypothetical question to the Vocational Expert that did not encompass all of Plaintiff's physical limitations, thereby violating the standard set forth in *Arocho v. Secretary of Health & Human Services,* 670 F.2d 374 (1st Cir.1982). Second, that the ALJ violated Plaintiff's Fifth Amendment right to due process by denying Plaintiff's request to send interrogatories and/or subpoenas to the medical consultants on her case.

■■■ The standard of review for this Court is whether the Commissioner's determination is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). It is important to note that for a social security case to reach federal court, a claimant's application for benefits must have been denied four previous times by the SSA review process. *See* 20 C.F.R. 404.900, *et seq.* Upon denial of an initial application, the applicant may seek reconsideration from a different set of examiners. An adverse reconsideration may then be appealed to an ALJ for a *de novo* hearing. ALJ decisions are appealable to the SSA Appeals Counsel, from which review may be had in federal court. The safeguards provided by this layered process of review certainly do not assure correct decisions in all cases.[1] Nonetheless, these multiple "bites at the apple" are viewed as sufficient to shift the burden to the claimant to show that the SSA's decision is not supported by substantial evidence. *Rodriguez v. Secretary of Health & Human Services,* 647 F.2d 218 (1st Cir.1981).

The case was referred to Magistrate Arenas for a report and recommendation. The Magistrate found Plaintiff's first claim—that the ALJ submitted an incomplete and therefore improper question to the Vocational Expert—without merit. I agree, and adopt without additional comment the Magistrate's report and recommendation on this issue.

■■■ On the second issue, the Magistrate found that the failure to permit cross-examination denied Plaintiff due process, and recommended a remand to the SSA. For the reasons stated below, I do not adopt the Magistrate's recommendation on this issue. To summarize, I find that neither Constitutional due process considerations, nor statu-

1. *See* Jerry Mashaw, et. al., *Social Security Decisions and Appeals* (1978), Koch & Koplow, *The Fourth Bite at the Apple: A Study of the Operation and Utility of the Social Security Administration's Appeals Council,* 17 Fla.St.L.Rev. 190 (1990).

tory mandates, require a *per se* rule that disability claimants are in all cases entitled to subpoena for the purpose of cross-examining non-testifying experts in disability determination hearings before an ALJ. In accord with the Administrative Procedure Act, 5 U.S.C. § 556(d), SSA regulations invest ALJs with the discretion to subpoena such witnesses. 20 C.F.R. § 404.950(d)(1) & (2). The discretion granted the ALJ in this regard is entirely proper. Therefore, because the record does not demonstrate that the ALJ abused her discretion in denying the Plaintiff's request to subpoena the consulting physicians, the Commissioner's decision is affirmed.

### 1. The Right to Cross–Examine Consulting Physicians—The Supreme Court Precedents

All of the cases cited by Plaintiff refer to the Supreme Court's decision in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), for support. In *Perales*, the Court affirmed the SSA's denial of disability benefits based on the written reports of five doctors who did not testify at the hearing. The Court ruled that the hearsay nature of such evidence did not bar its use in administrative hearings. *Perales* left open an important question, however, because the disability applicant did not attempt to subpoena the five doctors whose reports formed the basis for the agency's finding. The *Perales* majority acknowledged this omission in a dictum qualifying its holding: "We conclude that a written report by a licensed physician ... may constitute substantial evidence supportive of a finding ... adverse to the claimant, *when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.*" *Id.* at 402, 91 S.Ct. at 1428 (emphasis added).

Relying on this dictum in *Perales*, several circuit courts of appeals have held that parties have a due process right to cross-exam-

ine the authors of reports adverse to their interests in agency hearings.[2] The question has not been decided by the Court of Appeals for the First Circuit.[3] I believe, however, that *Perales* can not support such an interpretation, especially when considered in light of the pair of cases, *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

*Goldberg* involved a claim by recipients of Aid to Families with Dependent Children (AFDC) that agency procedures violated the Due Process Clause because they did not provide for an oral evidentiary hearing prior to termination of benefits. The agency provided such a hearing only *after* benefits were terminated. The initial decision was made on the basis of less formal procedures.

The Court agreed with the beneficiaries on the need for a pretermination hearing because erroneous termination of AFDC benefits would deprive a beneficiary of "the very means by which to live" and would place a beneficiary in an "immediately desperate" situation. *Goldberg*, 397 U.S. at 264, 90 S.Ct. at 1018. The Court went on to say, however, "that the pretermination hearing need not take the form of a judicial or quasi-judicial trial." The procedural requirements of the hearing could be limited "to minimum procedural safeguards, adapted to the particular characteristics of welfare recipients, and to the limited nature of the controversies to be resolved." *Id.* at 267, 90 S.Ct. at 1020.

Thus, the Court explicitly recognized that due process can require procedures less rigorous than those in a trial-type hearing. Nonetheless, in the context of an AFDC termination decision, the Court found the need for many of the elements of a trial-type hearing, including the right to cross-examine adverse witnesses.

The Court soon recognized, however, that the modern administrative state could not function effectively if agencies were required

---

**2.** Plaintiff cites, in particular, *Figueroa v. Secretary of Health, Ed. & Welf.*, 585 F.2d 551 (1st Cir.1978); *Townley v. Heckler*, 748 F.2d 109, 2d Cir.1984); *Wallace v. Bowen*, 869 F.2d 187 (3d Cir.1989); *Lidy v. Sullivan*, 911 F.2d 1075 (5th

Cir.1991); and *Coffin v. Sullivan*, 895 F.2d 1206 (8th Cir.1990).

**3.** *See infra* note 6.

to conduct a trial-type hearing each time they made a decision affecting an individual's status. Thus, "[m]any of the Court's post-*Goldberg* opinions can be explained as part of an effort to construct defensible limits on the scope of its holding in *Goldberg*." 2 Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.3 at 14 (3d ed. 1994).

*Perales* must be viewed as part of this development. The decision dramatically liberalized the procedural requirements of administrative hearings in two distinct ways. First, as discussed previously, the decision effectively eliminated the prior severe restrictions on agency reliance on hearsay. The Court justified this revolution in the doctrine on practical, policy-based considerations. Among other factors, the Court pointed to "[t]he vast workings of the social security system [which] make for reliability and impartiality in the consultant reports," as well as "[t]he[ ] routine, standard, and unbiased" nature of the reports at issue. The Court also noted what it characterized as "an additional and pragmatic factor": the sheer "cost of providing live medical testimony at" all ALJ hearings. *Perales*, 402 U.S. at 402–06, 91 S.Ct. at 1427–30.

■■■ Second, *Perales* approved the broad power of SSA ALJ's to wear the dual hats of both investigator and adjudicator. SSA ALJs have an affirmative responsibility to investigate each case, to present evidence for and against the claimant, and then to decide. 20 CFR 404.929, *et. seq.* This array of responsibilities directly conflicts with § 554(d) of the Administrative Procedure Act (APA), which expressly forbids such co-mingling of functions: "An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not ... participate or advise in the decision...." 5 U.S.C. § 554(d). Nonetheless, the Court dealt with this aspect of the SSA procedures in a single paragraph:

> Neither are we persuaded by the advocate-judge-multiple-hat suggestion. It assumes too much and would bring down too many procedures designed, and working well, for a governmental structure of great and growing complexity. The social security hearing examiner, furthermore, does not act as counsel. He acts as an examiner charged with developing facts. The 44.2% reversal rate for all federal disability hearings in cases where the state agency does not grant benefits attests to the fairness of the system and refutes the implication of impropriety.

*Perales*, 402 U.S. at 410, 91 S.Ct. at 1432.[4]

Thus, *Perales* carries impressive credentials for banishing formal, trial-type procedures from administrative hearings. The decision exudes concern for, and cognizance of, the administrative realities confronting the SSA. It is surprising, therefore, that dictum which constitutes little more than a parenthetical aside, is cited as imposing a per se rule imposing an extreme administrative burden on the SSA. This is especially true in light of the Court's subsequent opinion in *Mathews v. Eldridge*.

*Mathews*, decided five years after *Perales*, involved a challenge to the adequacy of the procedures used by the SSA to determine a beneficiary's continuing eligibility to benefits. The claimant cited *Goldberg* to support his contention that SSA's procedures violated due process by failing to provide an oral evidentiary hearing prior to termination of disability benefits. Nonetheless, the Court distinguished *Goldberg* and held SSA's procedures adequate.[5] In so holding, the Court

4. Curiously, in approving the SSA system, the Court did not consider whether the APA applied, although the Court did note that the APA was not intended to supplant the Social Security Act. *Id.* at 409, 91 S.Ct. at 1431. Nonetheless, interpreted literally, the APA prohibits what the Court approved.

5. It could be argued that *Mathews* is inapposite because *Mathews* only addressed the requirements of a *pretermination* hearing, assuming that a formal ALJ hearing would be held post-termi-

nation. This view is supported by the Court's characterization of the private interest at stake—which the Court identified as the stream of benefits that would otherwise be received during the period between the initial termination of benefits and the date when SSA could be expected to make a subsequent decision based on a post-termination oral evidentiary hearing. *Id.* at 340–42, 96 S.Ct. at 905–06. This is unpersuasive, however, because the issue is not whether to

established the following analytical framework that has become the starting point for contemporary analysis of due process:

> Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.... [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. The Court then proceeded to assess each of the factors identified in this balancing test.

After identifying the private interest at stake, *see* discussion *supra* note 5, the Court assessed the risk of erroneous deprivation and the marginal utility to be derived from increasing the rigors of the challenged procedures. The Court compared the written exchange of medical information provided by SSA and the oral evidentiary hearing requested in *Goldberg.* In holding SSA's procedures adequate, the Court emphasized two distinctions between the AFDC decision at issue in *Goldberg* and the disability decision at issue in *Mathews*—the nature of the most frequently disputed issues of fact and the nature of the participants in the decision-making process. The Court noted that the factual issues in dispute in disability cases involve conflicting medical diagnoses which are resolved by application of relatively objective scientific criteria. "This is a more sharply focused and easily documented decision than the typical determination of welfare entitlement." *Id.* at 343, 96 S.Ct. at 907. By contrast, a much "wide[r] variety of information may be deemed relevant" in an AFDC case. *Id.* The Court also opined that the substitution of oral procedures for written procedures could not be expected to substantially improve the accuracy of the fact-finding process in disability decision-making. *Id.* at 343–45, 96 S.Ct. at 906–08.

Finally, the Court evaluated the potential cost to the government that would result from requiring SSA to provide a trial-type hearing before it terminates disability benefits. The Court found these costs too high to justify such a requirement. *Id.* at 347–48, 96 S.Ct. at 908–09. In fact, to this day *Goldberg* remains the only case in which the Court has held that due process requires an agency to provide a trial-type hearing before it deprives an individual of an interest protected by due process.

### 2. SSA Procedures Evaluated by the Circuit Courts

Given this background, it is surprising that so many courts have held that due process requires disability claimants the opportunity to cross-examine adverse consulting physicians. *See* cases cited *supra* note 2. As is inevitably true of a string cite, however, the cases actually stand for a variety of propositions, not all of which are applicable here.[6]

■ Of the cases cited by plaintiff, *Wallace, Townley* and *Lidy* do hold that parties

---

hold an ALJ hearing, but rather the procedural requirements of such a hearing.

**6.** The First Circuit case cited by plaintiff, *Figueroa v. Secretary of Health, Ed. & Welf.,* 585 F.2d 551 (1st Cir.1978), for example, can hardly be characterized as establishing an absolute right to subpoena and cross-examine all adverse witnesses. The claimant in *Figueroa* contended that "he was denied an effective opportunity to cross-examine the vocational expert" because he was not told of his right to do so. *Figueroa,* 585 F.2d at 554. Although, citing *Richardson,* the court did refer to the claimant's "right to cross-examine," it nonetheless found no due process viola-

tion because the expert had actually testified at the ALJ hearing without the claimant's attorney seeking to cross-examine him. *Id.* (In this regard, the case resembles *Perales.*) Thus, the question of whether the ALJ was constitutionally compelled to require cross-examination of a non-testifying expert was not before the court.

That *Figueroa* did not settle the point in the First Circuit was made clear in a recently decided, but unpublished opinion in which the court considered, but expressly chose to avoid deciding the question because it found no due process violation in the process that the claimant did receive.

have a due process right to subpoena and cross-examine the authors of adverse reports.[7] Thus, these cases effectively invalidate in their respective circuits the SSA regulation that permits ALJs to refuse a request for a subpoena of a witness whose testimony is not "reasonably necessary for the full presentation of the case." 20 C.F.R. 404.950(d)(1). This troika of cases also stands in contrast to the Eleventh Circuit's decision in *Demenech v. Secretary of the Dept. of Health and Human Services,* 913 F.2d 882, 884–85 (11th Cir.1990) (not cited by Plaintiff), which assumed that the SSA regulation was valid, but held that the ALJ's refusal to grant the requested subpoena was both an abuse of discretion and a violation of due process in the particular circumstances. *See also Solis v. Schweiker,* 719 F.2d 301 (9th Cir.1983) (same holding as *Demenech* ) and *Copeland v. Bowen,* 861 F.2d 536, 539 (9th Cir.1988) (holding ALJ did not abuse discretion by limiting interrogatories propounded to consulting physician) (citing *Solis* ).

I find the approach taken in *Demenech* more persuasive than that in *Lidy.* As Professors Davis and Pierce explain, "[t]he absolute right to subpoena and to cross-examine all doctors who submit reports in disability disputes ... has the potential to do enormous harm to all individuals who apply for social security disability benefits." 2 Davis & Pierce, *supra,* at 114. Several considerations justify this assertion.

First, as the Supreme Court concluded in both *Mathews* and *Perales,* cross-examining the doctors who submit reports in these cases is not likely to significantly increase accuracy. In fact, imposing such a requirement on SSA might actually detract from the goal of enhancing accuracy. The facts from *Perales* illustrate this likelihood. SSA obtained reports from five doctors, each a specialist. If SSA knows that it must bear the cost of paying each physician it consults both

for the cost of preparing the reports, as well as for answering claimants' interrogatories or submitting to cross-examination, the SSA will likely respond by consulting fewer specialists. Alternatively, SSA's decision costs, as well as the time required to make such decisions, will soar.

Further, evaluating the ALJ's compliance with claimants' subpoena requests based on an "abuse of discretion" standard does not constitute total deference to the ALJs. *Demenech* and *Solis* are illustrative. In both cases the vast weight of medical opinion in the claimant's file supported a finding of disability, but in both cases the ALJ decision to deny benefits was based on the report of *one* consulting physician. In both instances the Court of Appeals reversed the ALJ's decision to deny cross-examination because of the weight and importance the ALJ had demonstrably placed on the non-testifying expert. In such a circumstance, cross-examination is useful given the weight of evidence supporting the claimant's position.

Lastly, to hold otherwise would require invalidating the applicable SSA regulation, 20 C.F.R. § 404.950(d), a step I will not take based solely on the snippet from *Perales* cited by Plaintiff. *See Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 842–844, 104 S.Ct. 2778, 2781–2783, 81 L.Ed.2d 694 (1984).

### 3. Application of the Abuse of Discretion Standard

■ It is clear that the ALJ in this case did not abuse her discretion in denying Feliciano's request to cross-examine the consulting physicians in her case. The record contains reports from three separate physicians whose conclusions are consistent with a finding of no disability as defined under the Act. Further, these assessments are consistent with the findings of the vocational expert who testified at the hearing, as well as with

---

7. *Wallace* and *Townley* involve the subtly distinct issue of whether such reports may be utilized if submitted *after* the ALJ hearing. As the Third Circuit recognized in *Wallace,* "[i]t may be that different considerations apply to cross-examination with respect to post-hearing evidence than pre-hearing evidence because the applicant may find it more difficult to respond effectively to post-hearing reports in the absence of an opportunity to present live rebuttal evidence." *Wallace,* 869 F.2d at 194. However, for the purposes of the following analysis, this distinction is not germane. *See Cabrera Matos v. Secretary of Health and Human Services,* No. 92–2166, at pp. 2–5 (D.P.R. Aug. 23, 1994).

the finding of the State Insurance Fund, which granted Ms. Feliciano only a 15% disability rating. The only medical report to the contrary is from Feliciano's treating physician, which the ALJ found unpersuasive.

Plaintiff contends that cross-examination of the physicians would illuminate the extent of her remaining residual functional capacity, the physician's qualifications, and "the sensitivity and credibility of the tests that were employed" by the physicians to arrive at their conclusions. In other words, Plaintiff seeks to conduct a fishing expedition. Her request to subpoena the consulting physicians failed to "state the important facts that the witness or document is expected to prove." 20 C.F.R. § 404.950(d). This fact, combined with the weight of evidence before the ALJ indicates that the ALJ did not abuse her discretion in denying the requested subpoena.

**THEREFORE,** the finding of the Commissioner is hereby **AFFIRMED.**

**IT IS SO ORDERED.**