# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-4103

_____

| | | |
|---|---|---|
| Cloyd Hepp, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| Lilia S. Hepp, Widow of Cloyd Hepp, | * | |
| | * | |
| | * | Appeal from the United States |
| Plaintiff, | * | District Court for the |
| | * | Eastern District of Arkansas. |
| v. | * | |
| | * | |
| Michael J. Astrue, Commissioner of Social Security | * | |
| | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted:  September 24, 2007
Filed: January 7, 2008

_____

Before COLLOTON, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

This is an appeal of the district court's[1] order affirming a final decision of the Commissioner of Social Security denying Cloyd Hepp's[2] application for disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423. Hepp argues that he was denied due process because he did not get an opportunity to cross-examine properly one of the medical examiners. Hepp also claims that the administrative law judge's ("ALJ") decision denying benefits was unsupported by substantial evidence because the ALJ's decision contained inconsistencies and improperly weighed the medical evidence. We affirm.

## I.    BACKGROUND

Hepp alleges that he has been disabled since January 6, 1997, due to spinal injuries and a torn rotator cuff in the right shoulder. He was covered for Title II disability benefits until March 31, 2002.

Hepp was sixty-three years old at the time of the administrative decision. He began experiencing lower back pain while serving in the Navy as a parachute rigger. Hepp retired from the Navy in 1990, with a ten percent disability rating. After his Navy service, Hepp worked seasonally in Alaska as a crab steamer and a fish processor. As a crab steamer, he would lift large containers of cooked crab. As a fish processor, Hepp received fish from boats and placed them in twenty, thirty, or one hundred pound totes. He then lifted the twenty and thirty pound totes and placed them on a conveyor belt. The hundred pound totes were transported with a forklift. Both

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas, adopting the report and recommendation of United States Magistrate Judge Jerry Cavaneau.

[2]Hepp died on October 21, 2006, after this appeal was filed but before we heard oral argument. The district court granted the motion of his widow, Lilia S. Hepp, to be substituted as the party plaintiff. For convenience and clarity, however, we will refer only to Cloyd Hepp in this opinion.

jobs required standing, stooping and bending for twelve to sixteen hours a day.  In January 1997, the processing plant laid Hepp off.

On August 31, 1999, Hepp filed an application for disability insurance benefits. Prior to this filing, his last medical treatment from a physician for his back or shoulder occurred in 1995.  On October 15, 1999, the ALJ sent Hepp to Raymond West, M.D., for a consultative examination.  Hepp reported that he used aspirin and Motrin for pain relief, and Dr. West claimed that "[o]bjectively, there is little to account for [Hepp's] back distress."  Dr. West concluded that Hepp could sit for at least two-hour periods, could stand or walk for at least thirty minute periods, and could alternate these activities occasionally in the workplace during an average workday.  Also, Hepp could occasionally, if not frequently, lift and carry twenty to thirty pounds for 200 to 300 feet and could bend, squat, kneel or crawl occasionally for short periods in the average workday.

Throughout 2001, Hepp received a series of medical examinations at the Veterans Hospital.  Radiology and bone density tests indicated diffuse demineralization, degenerative changes through the spine, and osteoporosis.  Hepp was prescribed Vioxx for pain relief.  On May 3, 2001, Hepp had a hearing before an ALJ.  The ALJ denied benefits to Hepp, and the Commissioner's Appeals Council refused to grant Hepp's request for review.  Hepp sought review in federal court.  In January 2003, the district court remanded the case back to the agency because the ALJ's findings were not supported by substantial evidence.  One of the district court's chief concerns was that neither the ALJ nor Dr. West had reviewed the 2001 radiology and bone density tests, which required analysis by a qualified physician.

On May 21, 2003, the ALJ conducted a second hearing.  Hepp testified that he could carry twenty to thirty pounds, though not very far.  He also indicated that he takes Motrin for pain and Fosamax for osteoporosis; it appeared he no longer took Vioxx.  He helped around the house by vacuuming, mopping, sweeping, washing

dishes, folding cloths, cooking, driving and mowing the lawn with a push mower. Hepp stated that when he drives for over an hour, he must pull off the road and walk around because of the pain. A vocational expert characterized Hepp's previous employment as a parachute rigger as medium and skilled work, his job as a crab steamer as heavy and unskilled work, and his job as a fish processor as medium and unskilled work.[3] The ALJ then requested that Hepp receive an orthopedic consultative examination.

In July 2003, William Blankenship, M.D., conducted a consultative examination of Hepp. Although Hepp was seventy-three inches in height throughout his time in the Navy, Dr. Blankenship's nurse recorded that Hepp was sixty-nine and a half inches tall. Hepp admitted that it has been "quite a while" since his last treatment and that he took Motrin for pain. Based on x-rays, Dr. Blankenship reported that Hepp had a compression fracture at T7 that had healed with a fifty percent loss of height. After testing Hepp's range of motion, Dr. Blankenship concluded that Hepp had no limitations with regards to lifting, carrying, standing, walking or sitting. Dr. Blankenship's report was submitted to the ALJ.

Hepp disagreed with Dr. Blankenship's conclusions and requested the right to cross-examine him. The ALJ agreed to schedule the cross-examination by telephone. Hepp objected to telephone cross-examination and requested in-person cross-examination, but the ALJ denied the request. Hepp also wanted to demonstrate that Dr. Blankenship was biased against social security disability claimants by presenting depositions, hearing transcripts, and medical reports in other cases involving Dr. Blankenship to discredit and impeach his testimony. However, the ALJ limited the

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).

scope of the cross-examination to Dr. Blankenship's report concerning Hepp's medical condition and prohibited any questions related to any other cases or patients.

The ALJ conducted a third hearing on January 14, 2004, during which Hepp cross-examined Dr. Blankenship by telephone. The doctor stated that he was not certain if he had received any bone density reports, but a bone scan which revealed dextroscoliosis only meant that there existed a curvature of the spine, which would not necessarily cause pain. Dr. Blankenship also indicated that a loss of height does not necessarily indicate any functional limitations. Upon further questioning, Dr. Blankenship testified that the x-rays did not substantiate Hepp's claim of numbness in his right arm and leg. He also denied manipulating patients when conducting range of motion tests. Finally, Hepp testified that his examination with Dr. Blankenship only lasted about fifteen minutes.

On April 29, 2004, the ALJ issued a decision denying disability benefits. The ALJ employed the five-step process outlined in 20 C.F.R. § 416.920 to determine whether Hepp was disabled.[4] The ALJ determined that Hepp had not performed gainful work since the alleged disability onset date and that he suffers from severe impairments which are not listed. The ALJ then employed the *Polaski* factors to evaluate the credibility of Hepp's subjective claims of pain. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ found: (1) an absence of objective medical findings to support the allegations of disabling pain; (2) an ability to remain active in the performance of household activities; (3) a lack of consistent medical care; (4) a long-term use of over-the-counter medication (Motrin) for effective pain relief;

---

[4]"The five part test is as follows: 1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not, 5) whether the claimant can perform any other kind of work." *Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003); *see also* 20 C.F.R. § 416.920.

and (5) a claim by Hepp that he could lift fifty pounds occasionally. Based on these findings, the ALJ determined that Hepp's subjective claims of pain lacked credibility.

At step four, the ALJ concluded that Hepp retained the residual functional capacity for medium work activity. The ALJ's opinion then contained a paragraph that was inconsistent with the remaining decision: "[t]he claimant has demonstrated that he is unable to perform his past relevant work. Therefore, [at step five,] the burden of proof shifts to the Commissioner of Social Security to establish that there are substantial numbers of jobs existing in the national economy that the claimant can perform with his particular limitations." However, later in the opinion and consistent with the earlier finding that Hepp could perform medium work activity at step four, the ALJ held that Hepp could perform his past relevant work as a fish processor as generally performed in the national economy. Consequently, the ALJ concluded that Hepp was not disabled under the Social Security Act.

After the Appeals Council denied review, Hepp again sought judicial review, arguing that the ALJ's decision lacked substantial evidence and that the ALJ violated his due process rights by restricting cross-examination to Dr. Blankenship's medical report of Hepp. Hepp also moved to remand the case to the ALJ in order to have new evidence considered. The new evidence consisted of a MRI report dated January 27, 2006, and a letter from Jon H. Dodson, M.D., dated April 10, 2006. Hepp then supplemented his motion to remand, claiming that the ALJ's refusal to allow in-person cross-examination of Dr. Blankenship violated his due process rights. The district court denied the motion. The court determined that the additional evidence was immaterial since it did not address Hepp's condition during the time period for which he was covered for Title II disability benefits, the information in the letter could have been obtained as early as 2003, good cause did not exist for Hepp's failure to submit the evidence in the letter before the record closed, and Hepp was not denied due process. The district court then affirmed the ALJ's decision.

Hepp appeals. He first argues that the ALJ denied him a full and fair hearing under the Social Security Act and under the Due Process Clause of the Fifth Amendment because the ALJ prohibited the presentation of certain evidence to prove Dr. Blankenship's bias and did not allow in-person cross examination of him. Second, he claims that the ALJ's decision was not supported by substantial evidence because the ALJ made inconsistent findings and "failed to identify what weight . . . he gave to the different consultative medical reports." Finally, Hepp argues that the district court improperly denied his motion to remand based on new evidence because the court used its own medical analysis to determine that the evidence was immaterial.

## II.    DISCUSSION

### A.    Full and Fair Hearing

We review a challenge to the procedures of a social security disability hearing de novo. *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003). A disability claimant is entitled to a "full and fair hearing" under the Social Security Act. *Northcutt v. Califano*, 581 F.2d 164, 167 (8th Cir. 1978). Procedural due process under the Fifth Amendment also requires full and fair hearings for disability benefits.[5]

---

[5]The Supreme Court has held that a person receiving benefits has a property interest in the continued receipt of the benefits. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The Supreme Court has not addressed whether an applicant has a protected property interest in benefits he or she hopes to receive. *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 n.8 (1985). Only the Ninth Circuit has found such a property interest. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990) ("An applicant for social security benefits has a property interest in those benefits."); *see also Hamby v. Neel*, 368 F.3d 549, 559 (6th Cir. 2004) (holding that applicants have a property interest in state medicaid for which they hope to qualify). In *Richardson v. Perales*, the Supreme Court assumed that due process applied to social security disability hearings without determining whether Perales had a property interest. 404 U.S. 389, 401-02 (1971). Like the Supreme Court in *Perales*, we will

*Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). To determine whether the process afforded is sufficient under the due process clause, courts must balance

> [f]irst, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Social security disability hearings are non-adversarial proceedings and therefore do not require full courtroom procedures. *See Perales,* 402 U.S. at 403 ("We bear in mind that the agency operates essentially, and is intended so to do, as an adjudicator and not as an advocate or adversary."); *Flatford v. Chater*, 93 F.3d 1296, 1306 (6th Cir. 1996) (holding that the non-adversarial nature of proceedings does not necessitate the cross-examination of every reporting physician); *Kendrik v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993) (stating that disability hearing procedures are informal). In *Perales*, the Court held that adverse medical reports may constitute substantial evidence in a disability hearing despite the absence of cross-examination of the report's author. 402 U.S. at 402. The Court reached this conclusion in part because the claimant could have cross-examined the physician but failed to exercise this right. *Id.* at 404-05.

Hepp first argues that the ALJ denied him a full and fair hearing because the ALJ did not permit the presentation of depositions, hearing transcripts and medical reports from other prior proceedings involving Dr. Blankenship to prove that he lacked objectivity. According to Hepp, the evidence would have shown that Dr.

assume that due process applies without determining whether Hepp had a property interest in the benefits.

Blankenship is biased against disability claimants because he has consistently found "no restrictions" for a substantial number of claimants referred to him for consultative examinations. However, the Social Security Administration's regulations provide a claimant the right to object to a consultative examination by a physician when the claimant believes that the designated physician lacks objectivity in general. 20 C.F.R. § 404.1519j. Hepp did not object to the assignment of Dr. Blankenship as his consultative examiner. Rather, he attempted at the hearing to challenge Dr. Blankenship's medical opinion based on his findings in other cases involving other patients. As found in *Perales*, due process is not violated in social security disability hearings when the claimant fails to exercise the procedural safeguards that would have addressed his concerns. *See Perales*, 402 U.S. at 404-05. Because Hepp did not exercise his procedural right to object to Dr. Blankenship's lack of objectivity under § 404.1519j, the ALJ did not violate Hepp's due process rights by denying such a challenge on cross-examination. *See id*. In addition, to permit Hepp the right to submit evidence from other claimants' cases to challenge the consultative examiner's lack of objectivity would substantially burden the social security disability hearings process because it would almost certainly result in mini-trials of unrelated and irrelevant claims. Furthermore, such a procedure would raise considerable privacy concerns as each patient's medical records were necessarily scrutinized. These reasons, in combination with the procedural safeguards already available under § 404.1519j, outweigh Hepp's private interest in obtaining benefits under the *Eldridge* balancing test.

Hepp next argues that the ALJ denied him a full and fair hearing because the ALJ refused Hepp's request for in-person cross-examination of Dr. Blankenship. Hepp claims that only in-person cross-examination allows for effective credibility determination of a witness. *See, e.g.*, *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983) ("[b]ias is better elicited through rigorous in-court scrutiny [than through written interrogatories]."). We have held that "[d]ue process requires that a claimant [for social security disability benefits] be given the opportunity to cross-examine and

subpoena the individuals who submit reports," but we have not addressed the type of cross-examination required. *Coffin v. Sullivan*, 895 F.2d 1206, 1212 (8th Cir. 1990).

Under the *Eldridge* balancing test, Hepp has a private interest in a fair determination of his qualification for disability benefits. However, we do not believe that, in a non-adversarial proceeding, an in-person cross-examination would significantly increase the accuracy of determining a witness's credibility over that of a telephone cross-examination. Additionally, an in-person cross-examination requirement would increase substantially the administrative costs and likely reduce the willingness of physicians to participate as consultative examiners. Hepp took full advantage of his opportunity to cross-examine Dr. Blankenship, albeit by telephone. In this non-adversarial process, Hepp was provided with a full and fair hearing. We conclude that due process under the Fifth Amendment does not require in-person cross-examination in social security disability hearings, and the ALJ did not violate Hepp's due process rights by refusing to require Dr. Blankenship to appear in person.

Although Hepp's brief does not cite the relevant Social Security Administration regulation, 20 C.F.R. § 404.950(e), it does allude to concerns that a telephone cross-examination would violate agency regulations. We need not address this issue because Hepp has waived it, as he did not raise it before the district court. *See Pelky v. Barnhart*, 433 F.3d 575, 580 (8th Cir. 2006); *Dixon v. Barnhart*, 353 F.3d 602, 606 (8th Cir. 2003).

### B.    Substantial Evidence

Hepp argues that substantial evidence does not support the ALJ's decision. We review de novo a district court's decision affirming a denial of social security benefits. *Reutter ex rel. Reutter v. Barhnart*, 372 F.3d 946, 950 (8th Cir. 2004). An ALJ's decision will be upheld if the record as a whole is supported by substantial evidence, a standard less demanding than the preponderance of the evidence standard. *Id.* To

determine whether substantial evidence exists, "we consider evidence that [both] detracts from the Commissioner's decision as well as evidence that supports it." *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004) (quotation omitted).

We first address Hepp's contention that we should remand because of the inconsistent paragraph in the ALJ's opinion. Hepp argues that the inconsistent paragraph renders unclear whether the ALJ determined that Hepp could perform his past relevant work and that the ALJ should have applied the Medical-Vocational Guidelines because the inconsistent paragraph indicated that Hepp could not perform his past relevant work. We have held that "an 'arguable deficiency in opinion-writing technique' does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome." *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) (quoting *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)). Although an unfortunate deficiency, the incongruous paragraph had no bearing on the outcome. First, the opinion remained clear that Hepp could perform his past relevant work as a fish processor. Second, the ALJ clearly determined that Hepp was not disabled at step four, and the Medical-Vocation Guidelines are applied only at step five. Because he determined that Hepp was not disabled at step four, the ALJ did not need to reach step five. *See Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 865 (8th Cir. 1989) ("If a claimant is found disabled or not disabled at any step in the sequential process, the ALJ need not proceed further."). Consequently, the deficiency does not require reversal since it had no bearing on the outcome.

Hepp next claims that the ALJ failed to identify what weight he gave to each of the consultative examiners' medical reports. According to 20 C.F.R. § 404.1527(c)(2), if the medical opinions in the record are inconsistent with each other, the ALJ must weigh all the evidence. *See* 20 C.F.R. § 404.1527(d). However, if medical opinions are consistent, the ALJ need not weigh them. 20 C.F.R. § 404.1527(c)(1). Because Dr. Blankenship's report and Dr. West's reports are

consistent with regards to the determinative factors, the ALJ did not err in not identifying the weight he gave to each medical opinion.

Hepp challenges the ALJ's application of the *Polaski* factors and his determination that Hepp's subjective claims of pain were not credible. The ALJ found that no objective medical evidence supported Hepp's allegations of disabling pain. Dr. West stated that "[o]bjectively, there is little to account for [Hepp's] back distress." Dr. Blankenship testified that bone scans that revealed dextroscoliosis would not indicate pain and x-rays of Hepp did not substantiate his claims of numbness in his right arm and leg. Hence, the ALJ's finding is supported by both consultative examiners. In regards to the other *Polaski* factors, Hepp performed a significant range of daily activities. He testified that he could drive up to an hour without pain and partook in household chores, such as vacuuming, sweeping, mopping, cooking and mowing the lawn. Hepp also lacked consistent medical care for his back. He did not receive medical treatment from 1995 to 1999 and received only sporadic medical attention thereafter. Hepp took moderate, over-the-counter medication for his pain. He told Dr. West and testified that Motrin worked effectively. Although prescribed Vioxx in 2001, Hepp was not taking it at the time of his second hearing. Finally, the ALJ found that Hepp had stated that he could lift fifty pounds occasionally. Hepp testified that he could carry twenty to thirty pounds, but did not state that he could lift fifty pounds occasionally. However, Dr. Blankenship's report permits the inference that Hepp could carry fifty pounds occasionally because Hepp had no exertional limitations. Dr. West's report indicates that Hepp could lift twenty to thirty pounds frequently, which does not foreclose a finding that Hepp could lift fifty pounds occasionally. Therefore, substantial evidence supports the ALJ's finding that Hepp's subjective claims of pain lacked credibility.

Substantial evidence also supports the ALJ's decision that Hepp could perform medium work. Medium work requires frequent lifting or carrying of twenty-five pounds, lifting or carrying no more than fifty pounds, standing or walking intermittently for approximately six hours in an eight hour day, and frequent bending-stooping. 20 C.F.R. § 404.1567(c); S.S.R. 83-10, 1983 WL 31251, at *6 (Soc. Sec. Admin. 1983). "Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time." S.S.R. 83-10, 1983 WL 31251, at *6. Dr. West's report indicated that Hepp could lift and carry twenty to thirty pounds occasionally, if not frequently, and Dr. Blankenship reported that Hepp had no lifting or carrying limitations. Dr. West also concluded that Hepp, at a minimum, could sit for two-hour periods, could stand or walk for thirty minute periods, could alternate these activities occasionally in the workplace, and could bend, squat, kneel or crawl occasionally for short periods in the average workday. Dr. Blankenship's report stated that Hepp's ability to stand, walk or sit were not affected by any impairments, and he could kneel, crouch, crawl and stoop frequently. Based on Dr. West's and Dr. Blankenship's medical reports, substantial evidence supports the ALJ's determination that Hepp could perform medium work and, therefore, his past relevant work as a fish processor as generally performed in the national economy. *See* 20 C.F.R. § 404.1560(b)(2).

### C.    Submission of New Evidence

The district court did not err in refusing to remand Hepp's case to the Commissioner for consideration of additional medical evidence. The district court may remand a case to have additional evidence taken "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "To be considered material, the new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied." *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (internal quotation

omitted). Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing a sufficient explanation. *See Hinchey v. Shalala*, 29 F.3d 428, 433 (8th Cir. 1994).

Hepp's new evidence consists of a 2006 MRI report and a letter written by Dr. Dodson that challenges Dr. Blankenship's findings. The MRI report addresses Hepp's condition in 2006, four years after his last date of coverage. Hence, the report is not relevant to Hepp's condition during the period which benefits were denied. The information in Dr. Dodson's letter could have been obtained prior to the closing of the administrative record. Because Hepp does not provide an explanation for failing to obtain the information before the record closed, he has not established good cause for not incorporating the evidence into the record in the prior proceedings.

## III. CONCLUSION

We conclude that the ALJ provided the claimant with sufficient due process and that substantial evidence supports the ALJ's decision. Accordingly, we affirm.

BEAM, Circuit Judge, concurs in the result.

_____