# United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

————————

No. 07-3078

————————

Eric Passmore,                                    *
                                                 *
                    Appellee,                     *
                                                 *      Appeal from the United States
        v.                                        *      District Court for the
                                                 *      Western District of Missouri.
Michael J. Astrue, Commissioner                   *
of Social Security,                               *
                                                 *
                    Appellant.                    *


————————

Submitted: April 17, 2008
        Filed: July 9, 2008 (Corrected: 08/04/2008)

————————

Before GRUENDER, BRIGHT and BENTON, Circuit Judges.

————————

GRUENDER, Circuit Judge.

    The Commissioner of Social Security ("Commissioner") appeals the district court's order reversing the Commissioner's denial of social security disability benefits and supplemental security income to Eric Passmore. The Commissioner argues that due process does not afford social security claimants an absolute right to subpoena and cross-examine a reporting physician. Specifically, the Commissioner argues that the district court erred in holding that Passmore's due process rights were violated when the Administrative Law Judge ("ALJ") denied his subpoena request. Because we hold that due process does not afford social security claimants an absolute right to

cross-examine and that the ALJ did not abuse his discretion by denying Passmore's subpoena request, we reverse and remand.

## I.    BACKGROUND

Passmore claims that he has been disabled since July 1998 when he slipped and injured himself while attempting to free a lawnmower from the mud. Passmore applied for social security disability benefits and supplemental security income in July 2001, alleging an inability to engage in substantial gainful employment due to a combination of impairments including back problems, obesity, gastroesophageal reflux disease, diabetes and anxiety.

The ALJ initially denied Passmore's application. On February 12, 2004, the Appeals Council remanded so the ALJ could obtain additional evidence, including a consultative orthopedic examination to evaluate Passmore's back impairment and the testimony of a qualified vocational expert.

At the ALJ's request, Dr. Charles Ash, M.D., provided the consultative orthopedic examination of Passmore. Passmore made no objection to Dr. Ash's objectivity. Dr. Ash submitted a report concluding that Passmore could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and occasionally climb, balance, stoop, kneel, crouch, and bend. On March 29, 2005, Passmore requested that the ALJ subpoena Dr. Ash to make him available for cross-examination at an upcoming hearing. Passmore's request indicated that he wanted to question Dr. Ash regarding, "but not limited to," the following issues: the length of the examination, the medical records and film he reviewed, his financial relationship with the Social Security Administration ("SSA"), his hospital privileges, his current and past complaints to the Board of Healing Arts, his prior history of license revocation, the clarification of language used in the report, and the nature and scope of his current practice.

On May 18, 2005, the ALJ conducted a supplemental hearing. At the hearing, the ALJ denied Passmore's subpoena request. Instead, Dr. Malcolm Brahams, an orthopedic medical expert, testified at the hearing after having reviewed all of Passmore's medical records, including Dr. Ash's report. Dr. Brahams testified that no medical findings supported Passmore's subjective claims of pain and that Passmore could perform light work. In addition, a vocational expert testified that a hypothetical person with Passmore's impairments could not perform Passmore's past relevant work but could work in light, unskilled jobs that exist in significant numbers in the national economy.

Thereafter, the ALJ issued a decision finding that Passmore was not "disabled" under the Social Security Act. After the Appeals Council denied review, Passmore sought judicial review. On February 7, 2007, the district court reversed the ALJ's decision and remanded for further proceedings. The district court determined that our decision in *Coffin v. Sullivan*, 895 F.2d 1206, 1212 (8th Cir. 1990), established that due process affords social security claimants an absolute right to cross-examine individuals who submit reports. Because the ALJ denied Passmore's subpoena request, the district court held that Passmore's due process rights were violated. On appeal, the Commissioner argues that *Coffin* does not provide an absolute right to cross-examine and that any suggestion otherwise in *Coffin* is dicta.

## II. DISCUSSION

### A. Precedent

"This panel is bound by Eighth Circuit precedent," *John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers*, 913 F.2d 544, 550 (8th Cir. 1990), and cannot overrule an earlier decision by another panel, *Jackson v. Ault*, 452 F.3d 734, 736 (8th Cir. 2006). However, when an issue is not squarely addressed in prior case law, we are not bound by precedent through *stare decisis*.

-3-

*Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993); *see Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."). In addition, "[w]e need not follow dicta." *John Morrell*, 913 F.2d at 550. Dicta is "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential[.]" Black's Law Dictionary 1102 (8th ed. 2004) (defining obiter dictum).

In *Richardson v. Perales*, the Supreme Court addressed whether procedural due process permits an examining physician's report to provide substantial evidence for a decision to deny benefits when the examining physician did not testify. 402 U.S. 389, 401-06 (1971). The Supreme Court stated:

> We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing, and despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, *when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.*

*Id.* at 402 (emphasis added).

Although the Supreme Court recognized that the claimant had a right to subpoena and an opportunity to cross-examine the physician, it did not explicitly state whether this right comes from the Due Process Clause of the Fifth Amendment or from either a statute or regulation. The Court, however, did clarify that "[a]lthough the claimant complains of the lack of opportunity to cross-examine the reporting

-4-

physicians, he did not take advantage of the opportunity afforded him under 20 C.F.R. § 404.926 to request subpoenas for the physicians. . . . [T]he claimant as a consequence is to be precluded from now complaining that he was denied the rights of confrontation and cross-examination." *Id.* at 404-05. Thus, it appears that the right to subpoena and cross-examine discussed in *Perales* stems from the agency's regulations.

The Fifth Circuit has "read *Perales* as conferring an absolute right to subpoena a reporting physician." *Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990). However, the agency's regulations relevant in *Perales* provide:

> *When it is reasonably necessary for the full presentation of a case*, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.

20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1) (emphasis added).[1] Because the regulations provide the ALJ discretion to issue a subpoena when "reasonably necessary for the full presentation of a case," the regulatory right to cross-examine is qualified and not absolute. Therefore, we conclude that *Perales* does not afford social security claimants an absolute right to cross-examine. *See Yancey v. Apfel*, 145 F.3d

---

[1]Although *Perales* cites 20 C.F.R. § 404.926, this regulation was altered in 1980, and the language from the regulation was moved to 20 C.F.R. §§ 404.950(d)(1) and 416.1450(d)(1). *See* Federal Old-Age, Survivors, and Disability Insurance and Supplemental Security Income for the Aged, Blind, and Disabled, 45 Fed. Reg. 52078 (Aug. 5, 1980) (reorganizing the Code of Federal Regulations). Section 404.950 addresses the presentation of evidence at a hearing for disability insurance benefits under Title II of the Social Security Act, and § 416.1450 addresses the presentation of evidence at a hearing for supplemental security income benefits based on disability under Title XVI of the Social Security Act. Both are relevant in this case.

106, 112 (2d Cir. 1998) ("Although the Court mentioned the 'right to subpoena,' it never specifically addressed whether this 'right' was limited or absolute. The *Perales* Court indirectly acknowledged the ALJ's discretion in these matters by noting that the admission of consultative physicians' reports did not threaten the integrity or fairness of the administrative proceedings in light of the fact that such reports are subject to 'cross-examination as may be required for the full and true disclosure of the facts.'"); *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996) ("Thus, *Perales* did not concern the issue of whether a social security benefit claimant who requests cross-examination of a witness must be allowed to conduct it. Although the Supreme Court used the phrase 'right to subpoena,' the Court did not discuss whether this right was absolute or limited, or the nature of the right.").

In *Coffin v. Sullivan*, we discussed the due process requirements of social security disability hearings with respect to post-hearing interrogatories posed to a vocational expert. 895 F.2d at 1210-13. There, after the hearing, the ALJ determined it necessary to obtain evidence through written interrogatories from a vocational expert. *Id.* at 1209. The ALJ sent Coffin's attorney a copy of the proposed interrogatories and a letter indicating that Coffin could object to any of the interrogatories or propose his own interrogatories. *Id.* The letter also stated that Coffin had ten days to respond; otherwise, the ALJ would assume that Coffin had no objections to the proposed interrogatories. After Coffin's attorney did not respond, the ALJ sent the vocational expert the proposed interrogatories. Coffin's attorney also received the vocational expert's responses and another letter providing Coffin an opportunity to comment on these responses. Again, Coffin's attorney failed to respond. *Id*. at 1210-11.

We held that these letters satisfied due process and that Coffin waived his right to cross-examine the vocational expert because his attorney had failed to object to the interrogatories when the opportunity arose. *Id*. at 1212. However, in determining whether the post-hearing interrogatories satisfied due process, the court said "[d]ue

process requires that a claimant be given the opportunity to cross-examine and subpoena the individuals who submit reports." *Id*. (citing *Perales*, 402 U.S. at 402; *McClees v. Sullivan*, 879 F.2d 451, 452 (8th Cir. 1989)). The district court interpreted this statement as our circuit's adoption of an absolute right to cross-examine individuals who submit reports.[2]

The Commissioner argues that this statement does not establish an absolute right to cross-examine and that, to the extent that *Coffin* does support such an absolute right, the language was dicta because it was not necessary to the decision in the case. Passmore conceded that this statement was dicta in his appellate brief and during oral argument, arguing that the language was persuasive but not binding. Nonetheless, Passmore contends that the clear direction of *Coffin* indicates that due process requires an absolute right to cross-examine. We agree with the Commissioner.

First, *Coffin* does not mandate "an absolute right to cross-examine" but simply refers to an "opportunity to cross-examine." The phrase "opportunity to cross-examine" could mean that the claimant is entitled to cross-examine individuals who submit reports when a subpoena has been sought, or it could mean that the ALJ may permit the claimant to cross-examine individuals who submit reports if, in the ALJ's discretion, the cross-examination is necessary to a full presentation of a case. *See Flatford*, 93 F.3d at 1305 n.9 (asserting that our circuit had understood "opportunity to cross-examine" as providing an absolute right). It is not clear which interpretation of "opportunity to cross-examine" *Coffin* intended. However, *Coffin* cited *Perales*, which, as explained above, addressed a qualified right to subpoena and cross-examine

_____

[2]The Second, Fifth and Sixth Circuits have also interpreted *Coffin* as adopting an absolute right to cross-examine. *Yancey*, 145 F.3d at 112; *Lidy*, 911 F.2d at 1077; *Flatford*, 93 F.3d at 1300.

pursuant to the SSA's regulations.[3]  Therefore, we do not believe that *Coffin* squarely addressed and established an absolute right to cross-examine.

Second, even if *Coffin* could be read to establish such an absolute right, it would be dicta.  The issue in *Coffin* was whether the interrogatories submitted by the ALJ to the vocational expert violated due process.  We held that the interrogatories did not violate due process because Coffin's attorney had failed to object to the interrogatories when the opportunity arose, thereby waiving Coffin's right to cross-examine the vocational expert.  Any judicial comment with respect to an absolute or qualified right to cross-examine was unnecessary to the decision that the interrogatories did not violate the Due Process Clause.  In fact, the parties here agree that even if *Coffin* could be read to articulate an absolute right to cross-examine, such a statement would be dicta.  Therefore, we are not bound by any Eighth Circuit precedent that due process affords social security claimants an absolute right to subpoena and cross-examine. We must now determine, for the first time, whether due process affords such an absolute right.

## B.    Due Process

"We review a challenge to the procedures of a social security disability hearing de novo." *Hepp v. Astrue*, 511 F.3d 798, 804 (8th Cir. 2008).  Procedural due process under the Fifth Amendment requires that disability claimants be provided a "full and fair hearing."[4] *Id*.  "Social security disability hearings are non-adversarial proceedings

---

[3]*Coffin* also cited *McClees*, which questioned the reliability of post-hearing reports when "it was not possible to either subpoena or cross-examine the interviewer because his identity was unknown." *McClees*, 879 F.2d at 452. *McClees* did not address whether the right to cross-examine is qualified or absolute.

[4]The first question in a procedural due process claim is whether the claimant has been deprived of a protected liberty or property interest. *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).  Although the Supreme Court has held that a

and therefore do not require full courtroom procedures." *Id.* However, to determine whether the process afforded is sufficient under the due process clause, courts must balance

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Fifth Circuit determined that social security claimants have an absolute right to cross-examine a reporting physician. *Lidy*, 911 F.2d at 1077. However, the Fifth Circuit did not use the *Eldridge* balancing test but instead relied on *Perales*, stating that the Supreme Court's reference to the "right to subpoena" and not the "right to request a subpoena" implied an absolute right to cross-examine. *Id.* We disagree with the Fifth Circuit's conclusion because, as stated earlier, we conclude

---

person receiving benefits has a property interest in the continued receipt of benefits, *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), neither the Supreme Court nor our court has addressed whether a social security disability applicant has a protected property interest in benefits he or she hopes to receive, *see Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 n.8 (1985); *Gipson v. Harris*, 633 F.2d 120, 122 (8th Cir. 1980); *but see Koch v. Sec'y of the Dep't of Health, Educ., & Welfare*, 590 F.2d 260, 263 (8th Cir. 1978) ("The Supreme Court has acknowledged, however, that there is still a sufficient property interest in social security benefits to fall within the protection against arbitrary government action afforded by the Due Process Clause."). In *Perales*, the Supreme Court assumed that due process applied to social security disability hearings without determining whether Perales had a property interest. 404 U.S. at 401-02. We did the same in *Hepp. See Hepp*, 511 F.3d at 804 n.5. As was done in *Perales* and *Hepp*, we will assume that due process applies without determining whether Passmore had a property interest in the benefits.

-9-

that *Perales* did not address an absolute, due process right to cross-examine but instead addressed a qualified, regulatory right to subpoena and cross-examine.

The Sixth Circuit, on the other hand, has determined that due process does not afford a social security claimant an absolute right to cross-examine. *Flatford*, 93 F.3d at 1306-07. In *Flatford*, because no cardiologist in the Knoxville, Tennessee area would serve as a medical advisor to the SSA, the ALJ submitted interrogatories to Dr. Donald Saunders, Jr., a cardiologist from Columbia, South Carolina. *Id.* at 1297-98. After Dr. Saunders's responses were submitted as evidence, Flatford sought to subpoena and cross-examine him. *Id.* at 1298. The ALJ agreed to submit further interrogatories but denied Flatford's request to subpoena Dr. Saunders. Flatford appealed, arguing that the right to cross-examine was absolute. To determine whether due process affords an absolute right to cross-examine, the Sixth Circuit applied the *Eldridge* balancing test, stating:

> The private interest involved here is Flatford's interest in a fair determination of his qualification (or lack thereof) for social security disability benefits and a meaningful opportunity to present his case. A disability determination is based on a number of factors, including the objective medical evidence in the case. Because of the nonadversary nature of social security adjudications, the need to cross-examine every reporting physician is less crucial to the fairness and accuracy of the administrative law judge's decision than it would be in an adversarial context. We are unpersuaded that interrogatories may not provide a meaningful opportunity for a disability claimant to confront the evidence he believes to be adverse to his claim.

> As illustrated by this case, the practice of using interrogatories to question medical witnesses appears to work well for discerning an applicant's medical condition. While almost every claimant in every case would like to cross-examine the witnesses, we do not believe that the danger of inaccurate medical information or biased opinions is sufficiently great to cause us to believe that a claimant might erroneously be denied benefits without cross-examination upon demand.

-10-

Lastly, the burden on the administrative system of an absolute right to subpoena would be significant. Aside from the cost to the social security trust fund of paying for the travel expenses and fee of Dr. Saunders if he were subpoenaed, the number of physicians willing to provide medical advice to the administrative law judge would drop. The protection of the administrative law judge's discretion to issue a subpoena would reduce the inconvenience to reporting physicians of having to be cross-examined by those claimants who, for whatever reason, believe that more objective medical information would be obtained by asking questions in person rather than submitting them in writing.

A determination of Flatford's claim requires that he have the opportunity to present all of his evidence and to confront the evidence against him. This opportunity, we believe, is present where cross-examination is available where reasonably necessary to the full development of the case. We agree . . . that an absolute right to cross-examination is not required in the social security disability benefits cases for the development of a complete record.

*Id.* at 1306-07. The Second Circuit agreed with the Sixth Circuit's application of *Eldridge* and likewise determined that the right to cross-examine was qualified. *Yancey*, 145 F.3d at 112-13. Like the Second Circuit, we also agree that the Sixth Circuit's application of *Eldridge* is legally sound and persuasive.

However, we must analyze independently the second prong of the *Eldridge* balancing test because the ALJ in *Flatford* employed a different procedure than the ALJ here. Specifically, the ALJ in *Flatford* submitted interrogatories to Dr. Saunders. Here, Dr. Brahams testified in the place of Dr. Ash. Like Dr. Ash, Dr. Brahams was an orthopedic medical expert. He had reviewed all of Passmore's medical records, including Dr. Ash's report. At the supplemental hearing, Dr. Brahams discussed Dr. Ash's report along with the other medical records, and Passmore was given the opportunity to cross-examine Dr. Brahams.

In analyzing the second prong, we do not think the different procedure in this case alters the *Eldridge* analysis as conducted in *Flatford*, i.e., that Dr. Brahams's testimony created a greater risk of an erroneous deprivation of Passmore's interest than the use of interrogatories did in *Flatford*. Dr. Brahams was qualified and capable of fully explaining the medical findings, including those contained in Dr. Ash's report. Passmore thus had an opportunity to confront the evidence he believed was adverse to his claim. Additionally, if Passmore or the ALJ had found Dr. Brahams's explanations insufficient, then Passmore could have requested or the ALJ could have obtained further clarification from Dr. Ash. Passmore, however, did not make such a request after Dr. Brahams's testimony. Therefore, based on the *Eldridge* balancing test, we conclude that due process does not afford social security claimants an absolute right to cross-examine individuals who submit a report. We must now decide whether the ALJ abused his discretion under the SSA's regulations when he denied Passmore's request to subpoena Dr. Ash.

## C.    Abuse of Discretion

Because the agency's regulations provide the ALJ discretion in the issuance of a subpoena, *see* 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1), "[w]e must decide whether the [ALJ] abused his discretion in this case," *Flatford*, 93 F.3d at 1307; *accord Yancy*, 145 F.3d at 113.

Passmore sought to subpoena Dr. Ash to question him regarding, "but not limited to," the length of the examination, the medical records and film he reviewed, his financial relationship with the SSA, his hospital privileges, his current and past complaints to the Board of Healing Arts, his prior history of license revocation, the clarification of language used in the report, and the nature and scope of his current practice. The ALJ denied the subpoena request, claiming that Passmore failed to "state the important facts that the witness or document is expected to prove; and

-12-

indicate why these facts could not be proved without issuing a subpoena." *See* 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2).

We do not think that the ALJ abused his discretion because Passmore failed to identify, as required by regulation, the important facts that Dr. Ash was expected to prove or any explanation why these facts could not be proved without a subpoena and cross-examination. *See* 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2). For example, Passmore could have testified as to the length of the examination and could have asked Dr. Brahams to clarify the language used in Dr. Ash's report. Passmore also never indicated why the information he sought could not have been obtained through interrogatories. Additionally, the bulk of the issues that Passmore identified as subjects of his desired cross-examination are relevant only to a claim that Dr. Ash lacked objectivity. However, Passmore failed to explain why he did not object to any lack of objectivity of Dr. Ash prior to the examination pursuant to 20 C.F.R. § 404.1519j. *Cf. Hepp*, 511 F.3d at 805 (holding that due process is not violated when a disability claimant is denied an opportunity to cross-examine an examining physician for a lack of objectivity because the claimant failed to raise that the examining physician lacked objectivity when an opportunity to make such a challenge was provided pursuant to § 404.1519j). Because Passmore failed to establish that his cross-examination of Dr. Ash was reasonably necessary for the full presentation of his case, we conclude that the ALJ did not abuse his discretion by denying Passmore's request to subpoena and cross-examine Dr. Ash.

## III. CONCLUSION

We conclude that the ALJ neither violated Passmore's due process rights nor abused his discretion when he refused to subpoena Dr. Ash. Accordingly, we reverse and remand to allow the district court to determine if substantial evidence supports the

ALJ's decision to deny social security disability benefits and supplemental security income to Passmore.[5]

_____

[5]Passmore argues that we should determine that substantial evidence supports a finding that Passmore is disabled. We decline to address the merits of the underlying case in the first instance.

-14-