# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-2218
_____

United States of America

*Plaintiff - Appellee*

v.

Duane D. Worthington

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa

_____

Submitted: April 13, 2022
Filed: January 5, 2024

_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

After vacating Duane D. Worthington's sentence of 425 months of imprisonment under 28 U.S.C. § 2255, the district court[1] imposed a reduced sentence

_____

[1]The Honorable John A. Jarvey, then Chief Judge, United States District Court for the Southern District of Iowa, now retired.

of 420 months. Worthington appeals, arguing the district court procedurally erred by miscalculating his advisory sentencing range. We affirm.

## I. Background

In 1996, Worthington stole $30,000 worth of traveler's checks from an insurance and travel agency in Iowa. During the robbery and getaway, Worthington threatened two people with a firearm. Eventually he was arrested, and a grand jury charged him with four crimes: (Count One) receipt and possession of stolen property, 18 U.S.C. § 2315; (Count Two) interfering with and affecting commerce by robbery, 18 U.S.C. §§ 1951, 3559(c); (Count Three) using and carrying a firearm during and in relation to the robbery, 18 U.S.C. § 924(c); and (Count Four) unlawfully possessing a firearm as an armed career criminal, 18 U.S.C. §§ 922(g)(1), 924(e). Later, the government filed a notice that it would seek enhanced penalties on account of Worthington's past convictions for robbery and attempted robbery. The government alleged the past convictions constituted "serious violent felonies" under 18 U.S.C. § 3559(c) (also known as the federal three strikes statute), and "violent felonies" under 18 U.S.C. § 924(e) (also known as the Armed Career Criminal Act or ACCA). If convicted, Worthington thus faced a mandatory life sentence on Count Two and a fifteen-year minimum sentence on Count Four.

On the morning of trial, Worthington and the government reached a binding plea deal. *See* Fed. R. Crim. P. 11(c)(1)(C) (providing a plea agreement may stipulate "that a specific sentence or sentencing range is the appropriate disposition of the case" and "such a recommendation or request binds the court once the court accepts the plea agreement"). Under the agreement, Worthington would plead guilty to all four counts of the indictment, and receive concurrent prison sentences of 365 months on Counts One, Two, and Four, to be followed by a statutorily-required 60-month sentence on Count Three, *see* 18 U.S.C. § 924(c)(1)(A)(i). The agreement prevented the government from seeking a life sentence and required Worthington to waive his right to appeal or seek collateral relief under § 2255. The district court accepted the plea, and the case proceeded to sentencing.

United States Probation completed a presentence investigation report (PSR). The PSR noted the binding plea agreement and the resulting "agreed upon sentence [of] 425 months imprisonment[.]" The PSR noted the sentence was within the range calculated under the then-mandatory United States Sentencing Guidelines (U.S.S.G. or Guidelines) of 292 to 365 months for Counts One, Two, and Four, plus an additional 60 months on Count Three to run consecutively. For purposes of sentencing, the PSR determined Worthington was both: (1) a "career offender" under U.S.S.G. § 4B1.1 because of multiple past convictions for robbery and attempted robbery that were "crimes of violence" as defined by U.S.S.G. § 4B1.2(a); and (2) an "armed career criminal" under U.S.S.G. § 4B1.4(a) because those same crimes were "violent felonies" as defined by 18 U.S.C. § 924(e). The district court adopted the PSR and imposed the agreed upon 425-month sentence. Worthington did not directly appeal his federal conviction or sentence.

In 1998, Worthington moved under 28 U.S.C. § 2255, claiming ineffective assistance of counsel in violation of the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The district court denied the motion, explaining Worthington could not show prejudice as necessary for an ineffective assistance claim, noting his attorney "vigorously represented him and negotiated very favorable terms for his plea agreement." Worthington applied for a certificate of appealability, which this court denied.

In 2015, the Supreme Court held that increasing a statutory minimum sentence under the ACCA's residual clause violated the Fifth Amendment's due process clause. *See Johnson v. United States*, 576 U.S. 591, 593, 595, 602 (2015). In 2016, the Supreme Court determined *Johnson*'s holding was retroactive on collateral review. *See Welch v. United States*, 578 U.S. 120, 135 (2016).

In May 2016, Worthington sought permission to file a successive § 2255 motion in order for the district to fully explore and determine the merits of his claim for *Johnson* relief. Worthington suggested both his armed career criminal status and his career offender status should be revisited. Worthington also suggested *Johnson* may impact his conviction and sentence for using a firearm during a crime of

-3-

violence in violation of 18 U.S.C. § 924(c).  This court held the motion in abeyance pending the Supreme Court's resolution in *Beckles v. United States*, 580 U.S. 256 (2017).

In *Beckles*, the Supreme Court held that § 4B1.2(a)'s residual clause for defining crimes of violence for purposes of the Guidelines was not subject to a challenge under the void-for-vagueness doctrine.  580 U.S. at 267.  After *Beckles* was decided, this court granted Worthington leave to file an optional supplement to his motion addressing the effect of the decision.

Worthington submitted a supplemental brief, arguing *Beckles* did not control because it only resolved the residual-clause issue in the context of an advisory Guidelines sentence.  Unlike in *Beckles*, the sentence Worthington sought to challenge was imposed when the Guidelines were mandatory.  Thus, Worthington argued, the due process concerns that triggered the Supreme Court's decision in *Johnson* still applied with equal force to the mandatory Guidelines that controlled his sentence, including § 4B1.2(a)(2)'s residual clause.  Without reliance on the ACCA's or § 4B1.2(a)(2)'s residual clauses, Worthington argued he would be able to show that none of his state law robbery convictions qualified as career offender or ACCA predicate offenses.  The government opposed Worthington's request for authorization to file a successive § 2255 motion.

This court entered judgment in January 2018, granting authorization for Worthington to challenge his ACCA sentence based on *Johnson*.  But this court denied authorization for Worthington to challenge his career offender Guidelines sentence, or his conviction or sentence for the offense under 18 U.S.C. § 924(c).

After the district court's receipt of the mandate, Worthington argued to the district court that his sentence was illegal because his prior robbery convictions no longer qualified as violent felonies under the ACCA.  Worthington urged the district court to "grant his motion for § 2255 relief, vacate his sentence, and schedule a resentencing hearing to permit Mr. Worthington to be sentenced anew without application of the ACCA."  The government argued in part that relief was precluded

by the Rule 11(e)(1)(C) plea agreement and sought specific performance of the same. The district court rejected the government's Rule 11 argument, reasoning "Worthington was sentenced on multiple counts that were interdependent" and the "parties made no agreement as to what sentence should be imposed if the ACCA did not apply."[2] The district court vacated Worthington's sentence, ordered preparation of a new PSR, and scheduled resentencing.

United States Probation completed an amended PSR to reflect the appropriate statutory penalties and exclude reference to the ACCA. The PSR still considered Worthington a career offender and kept the now advisory Guidelines range at 292 to 365 months, plus an additional 60 months on Count Three to run consecutively.

At sentencing, the district court adopted this calculation over Worthington's objection. In doing so, the district court rejected Worthington's argument that he should not be considered a career offender for purposes of recalculating the Guidelines range. The district court concluded Worthington's argument contradicted this court's order granting the certificate of appealability because that order "prohibited [Worthington] from challenging his career offender status." The district court then heard arguments from both sides as to the appropriate sentence. The government urged the district court to impose the same 425-month sentence, while Worthington argued for a "sentence that is below the 425 months." After considering the relevant sentencing factors under 18 U.S.C. § 3553(a), and the parties' arguments, the district court imposed a total sentence of 420 months of imprisonment, five months less than his previous sentence.[3]

---

[2]The government continues to maintain that the district court erred by declining to hold Worthington to the promises in his plea agreement to forgo collateral relief under § 2255. However, the government did not file a cross appeal and so the issue is not properly before us. *See Greenlaw v. United States*, 554 U.S. 237, 240 (2008).

[3]The 420-month sentence consisted of 120 months on Count One, 240 months on Count Two, 60 months on Count Three, and 120 months on Count Four. Counts

## II. Analysis

On appeal, Worthington argues the district court procedurally erred by failing to correctly calculate the applicable Guidelines range. Worthington claims our precedent required the district court to apply the law in effect at resentencing following the grant of his § 2255 motion, citing to *United States v. Tidwell*, 827 F.3d 761, 764 (8th Cir. 2016).

According to Worthington, "[t]he de novo nature of the resentencing hearing required the district court to correctly assess [his] career offender status" for purposes of making its calculation under the current version of the Guidelines, which no longer includes a residual clause in § 4B1.2's definition of crime of violence. *See* U.S.S.G. supp. to app. C, amend. 798, at 128 (U.S. Sentencing Comm'n 2016) (amending the definition of "crime of violence" to remove the residual clause). And, because of the removal of § 4B1.2(a)(2)'s residual clause and intervening interpretative case law, Worthington maintains that his past robbery and attempted robbery convictions, as well as his Hobbs Act robbery conviction, all fail to qualify as crimes of violence. Thus, under Worthington's theory of the case, he should not have been considered a career offender and his advisory Guidelines range should have been calculated at 70 to 87 months of imprisonment, to be followed by the 60-month consecutive sentence for Count 3.

The district court rejected Worthington's argument in light of our January 2018 judgment granting only limited authorization to pursue his § 2255 motion. The district court reasoned Worthington's argument was foreclosed by our express denial of authorization to challenge his career offender Guidelines sentence. Applying de novo review to the district court's interpretation of our judgment's effect on the resentencing, *see United States v. Hamilton*, 950 F.3d 567, 571 (8th Cir. 2020), we affirm.

---

One and Two were to be served concurrently. Counts Three and Four were to be served consecutive to each other and to Counts One and Two.

It is fundamental that "inferior tribunals are bound to honor the mandate of superior courts within a single judicial system." *United States v. Castellanos*, 608 F.3d 1010, 1016 (8th Cir. 2010) (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995)). "When an appellate court remands a case to the district court, all issues decided by the appellate court become the law of the case, and the district court on remand must adhere to any limitations imposed on its function . . . by the appellate court." *Id.* (cleaned up) (ellipsis in original) (quoting same). *See also United States v. Behler*, 187 F.3d 772, 777 (8th Cir. 1999) (declining to consider the appellant's arguments relating to the propriety of certain enhancements "[i]n light of the law of the case and the limited language of our prior opinion").

Here, we granted Worthington authorization to challenge his statutory-minimum sentence under the ACCA. Without such authorization, Worthington could not bring his motion. *See* 28 U.S.C. §§ 2244(b)(3), 2255(h). But in the same judgment, we expressly denied Johnson authorization to challenge his "career-offender Guidelines sentence" or his "conviction and sentence for the offense under 18 U.S.C. § 924(c)." The district court rightly understood it was bound by this limitation and thus not free to relitigate the issue of whether Worthington was a career offender for purposes of sentencing.

Worthington downplays this limitation on the district court, claiming it was mere dicta and had no bearing on the district court's ability to reconsider Worthington's status as a career offender under the then-current version of the Guidelines. We disagree.

Our statement denying Worthington authorization to challenge his career offender Guidelines sentence was not dicta. "Dicta is a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential." *Sanzone v. Mercy Health*, 954 F.3d 1031, 1039 (8th Cir. 2020) (cleaned up) (quoting *Passmore v. Astrue*, 533 F.3d 658, 661 (8th Cir. 2008)). Because Worthington had already unsuccessfully sought § 2255 relief, he needed our authorization to challenge his sentence. *See Donnell v. United States*,

-7-

826 F.3d 1014, 1015, 1017 (8th Cir. 2016) (denying authorization for petitioner to file a successive § 2255(h) motion based on an argument that § 4B1.1's residual clause was unconstitutionally vague); *United States v. LaPrade*, 733 F. App'x 592, 594 (3d Cir. 2018) (unpublished) (explaining the district court lacked jurisdiction to consider a challenge to a sentence that was outside the district court's mandate "unless and until" the circuit court authorized a separate successive § 2255 motion to pursue this new challenge).

In seeking this authorization, Worthington argued *Johnson* gave the necessary hook to relitigate his (1) sentence under the ACCA, (2) career offender sentence, and (3) conviction and sentence for using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). In resolving his motion, we authorized a challenge to his ACCA sentence based on *Johnson*, but denied authorization to bring his other two challenges. This was not dicta because it was necessary to resolve his motion. Under the circumstances of this case, the denial of authorization for Worthington to bring these other challenges was akin to a remand to the district court with express limitations on its review. The district court was not free to ignore the limitation. *See Behler*, 187 F.3d at 777.

Contrary to Worthington's contention, our holding here does not run afoul of our opinion in *Tidwell*. In *Tidwell*, we held that when calculating the Guidelines range during a resentencing ordered under § 2255, the district court could consider a defendant's conviction that occurred after his original sentencing. 827 F.3d at 763, 764. In reaching this conclusion, we distinguished a de novo resentencing under § 2255 from resentencing after a general remand on direct appeal, during which the district court should apply the Guidelines that were in place during the original sentencing. *Id.* at 764 n.3. It was in this context the court in *Tidwell* observed that when resentencing de novo under § 2255 the district court "was clearly correct" in applying "the guidelines in effect at the time of resentencing, not at the time of the original sentencing." *Id.* at 764.

Although this observation was arguably dicta, a later panel characterized this statement as a holding. *See United States v. Binkholder*, 909 F.3d 215, 219 n.5 (8th Cir. 2018).[4] Regardless, the rule from *Tidwell* cannot be divorced from its rationale. As explained in *Binkholder*, "[t]he rationale for this rule, according to *Tidwell*, is that a resentencing under § 2255 is de novo, unlike a resentencing on remand from a direct appeal." 909 F.3d at 219 n.5 (citing *Tidwell*, 827 F.3d at 764 & n.3). Outside the context of a de novo re sentencing, the rationale disappears for applying *Tidwell*'s rule regarding which version of Guidelines to use.

And this brings us back to the impact of our denial of authorization for Worthington to challenge his career offender sentence. The district court was bound to adhere to this denial of authorization and thus, unlike most § 2255 proceedings, was not free to engage in a true de novo resentencing. Thus, we conclude the district court did not procedurally err by refusing to relitigate Worthington's career offender status or recalculate Worthington's advisory sentencing range under the newer version of the Guidelines.

---

[4]The court in *Binkholder* also observed that *Tidwell's* § 2255-resentencing-under-the-current-version-of-the-Guidelines rule created a "discrepancy" with an "otherwise uniform sentencing scheme" that typically sought to "make sure that defendants are sentenced under the version of the Guidelines in effect on the date of their *original sentencing*." *Id.* at 218–19 & n.5. Under the normal resentencing rules, the "defendants who receive an erroneous sentence and successfully appeal are returned to the position they would have been in had they been correctly sentenced the first time around." *Id.* at 219. "But they do not receive the unwarranted benefit of a favorable change in the Guidelines—unless the change was made retroactive, in which case it would be available to all defendants regardless of the outcome of a direct appeal." *Id.* Observing "[n]o other circuit" had addressed this discrepancy in approaches, the court questioned *Tidwell*'s § 2255 resentencing rule. *Id.* at 219 n.5 (explaining it need not address the issue, "as any irrationality would only call into question *Tidwell's* rule").

## III.  Conclusion

Accordingly, we affirm the district court's judgment.

_____